*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0234P (6th Cir.)
File Name: 00a0234p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CMC ELECTRIC, INC.,

           *Petitioner,*

    *v.*

OCCUPATIONAL SAFETY AND
HEALTH ADMINISTRATION,
UNITED STATES DEPARTMENT
OF LABOR; INTERNATIONAL
BROTHERHOOD OF
ELECTRICAL WORKERS,
LOCAL 673,

           *Respondents.*

No. 99-3801

On Petition for Review of an Order of the
Occupational Safety and Health Administration.
No. 96-169.

Submitted: April 27, 2000

Decided and Filed: July 19, 2000

Before: KENNEDY, SILER, and BATCHELDER, Circuit
Judges.

1

vacate sub-item 4(c) and remand the issue of the appropriate penalty for the two remaining sub-items to the Commission for consideration.

## IV.

For the foregoing reasons, we affirm the Serious Citation that CMC received with respect to Items 1, 3, and 4(a) and (b). We also affirm Item 2(a), but only to the extent that it applies to CMC's conduct on August 10 and 11 of 1995. Finally, in light of our holding with respect to Item 2(a) and 4(c), we remand the issue of the penalty which should be imposed for Citation Items 2 and 4.

---

### COUNSEL

---

**ON BRIEF:** Glen E. Forbes, COOPER & FORBES, Painesville, Ohio, for Petitioner. Ronald J. Gottlieb, Bruce Justh, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.

---

### OPINION

---

KENNEDY, Circuit Judge. Following the electrocution of one of its employees at a job site, petitioner CMC Electrics received a four item serious citation from the Occupational Safety and Health Administration for violating standards relating to employee training, availability of prompt medical attention, first aid certification, use of hard hats, and exposure to energized power lines. The matter was initially heard by an Administrative Law Judge, who upheld all but one of the citation items. The Occupational Safety and Health Review Commission then granted discretionary review and affirmed all four serious citation items. CMC petitioned this court for review of the Commission's decision. We affirm the Commission's decision except with respect to availability of prompt medical attention and first aid certification.

## I.

Petitioner CMC Electrics, Inc. ("CMC") is an industrial electrical contractor with approximately ten employees. CMC was hired by Jance Construction ("Jance") to install electrical wiring at an equipment building and antenna tower that Jance was constructing for Northern Ohio Cellular Telephone Company ("Cellular One"). CMC was to install a grounding system and run the necessary electrical wiring from the equipment building to a utility pole on the property. Ohio Edison Company ("Edison") installed the utility pole and

circuit. The employer shall post and maintain proper warning signs where such a circuit exists. The employer shall advise employees of the location of such lines, the hazards involved, and the protective measures to be taken.

The Commission observed that the record did not show that anyone from CMC had inspected the work site and the schematic that the employees were provided did not show the location of the energized high-voltage line. As noted above, the Commission also found that CMC would have discovered the energized line if it had exercised reasonable diligence and that the job required an employee to approach the wire in order to mount a pulley somewhere above the neutral line. As a result, the Commission affirmed CMC's serious citation for violating § 1926.416(a)(3), because CMC failed to "ascertain by inquiry or direct observation, or by instruments whether an energized circuit [was] so located that an employee might contact it."

As discussed above, the Commission did not err in concluding that the energized line was part of the employee's work environment and that Taylor was not on a separate frolic as he approached the line. Under these circumstances, CMC had no basis upon which it could conclude that an employee would not approach the line in the course of installing the conduit and wiring, particularly when the job itself required an employee to mount a pulley somewhere above the neutral line.

Because there is substantial evidence to support the Commission's finding that CMC violated 29 C.F.R. §§ 1926.416(a)(3), we affirm Serious Citation Item 4(b). As to Serious Citation Item 4(c), it was based upon section 1926.416(g)(2)(i)(A), which OSHA determined to be inapplicable to the construction industry sometime after the Commission's decision. As a result, OSHA states that it withdraws sub-item 4(c) and declines to address the Commission's decision on this sub-item. Therefore, we

energized the primary electrical feed line to the pole on August 9, 1995. John Smith ("Smith"), a superintendent at CMC, picked up the JX-2 schematic that Edison provided for installing wiring on the pole when he visited the site on August 10, 1995. The schematic called for CMC to attach conduit to the pole and then draw wire up through the conduit, leaving at least three feet of wire extending from the top of the conduit so that Edison could connect the wire to the transformer. The conduit was to extend no higher than six inches below the neutral or secondary power line. The 7,200-volt primary electrical feed line that Edison energized was located eight feet eight inches above the neutral line.

Rory Breedlove ("Breedlove"), Robert Biacofsky ("Biacofsky"), and Robert Taylor ("Taylor") were the three journeymen wiremen[1] that CMC assigned to work at the site. On Friday, August 11, 1995, Smith went to the job site with Breedlove and Biacofsky. Smith gave the two employees the JX-2 schematic, but did not review the job or schematic with them and did not indicate that they would be working near energized high-voltage lines. On Tuesday, August 15, Taylor joined the other two employees at the job site. Taylor and Breedlove worked on attaching the conduit to the utility pole. The schematic clearly indicated that the conduit should terminate at least six inches below the neutral or secondary line, warning that extending the "conduit above the secondary or neutral position at any time may result in severe electric shock." Despite this warning, the employees installed the conduit 2 feet, 9 3/4 inches above the neutral line.

A rope ran through the center of the conduit that Taylor and Breedlove attached to the utility pole. The rope was to be connected to electrical wire in order to pull the wire up through the conduit with a roughly seventy pound electrical

---

[1]The ALJ found that "wiremen" work in power utilization, working on high-voltage circuits and systems only when they are de-energized. In contrast, the ALJ found that "linemen" work in power distribution and have the necessary training and equipment to work on energized lines.

winch called a "chugger." The employees could not agree whether the chugger should be mounted above the conduit, or whether a pulley should instead be mounted above the conduit with the chugger remaining on the ground. The employees also did not agree on the status or purpose of the high-voltage line located 5 feet, 10 1/4 inches above the conduit. Eventually Taylor climbed up the twenty-four foot extension ladder to see if he could mount a pulley above the conduit. After reaching the top of the ladder he used bolts on the side of the pole to climb eight to ten feet higher, at which point his head came in contact with the 7,200 volt power line, electrocuting him. Biacofsky testified that neither he nor Taylor thought that the line was energized because they believed that power would not be turned on to the pole until after they completed their work.

After receiving a report of an electrocution at the Cellular One work site, investigators from the Occupational Safety and Health Administration ("OSHA") conducted an inspection of the site. Based on these inspections, OSHA issued a four item serious citation and a two item other than serious citation for violations of Occupational Safety and Health Act standards. The serious citation indicated that CMC had violated standards relating to employee training, availability of prompt medical attention, first aid certification, use of hard hats, and exposure to energized power lines. CMC contested the citations before an Administrative Law Judge ("ALJ"), who affirmed all but the serious citation item relating to the improper exposure of CMC's employees to energized power lines. Both parties requested discretionary review by the OHSA Review Commission. The Commission reviewed the ALJ's decision and affirmed all four of the serious citation items. CMC filed a timely petition for review of the Commission's decision by this Court.

## II.

In reviewing decisions of the Commission, we uphold the Commission's findings of fact so long as they are supported

Section 1926.416(a)(1) provides:

No employer shall permit an employee to work in such proximity to any part of an electric power circuit that the employee could contact the electric power circuit in the course of work, unless the employee is protected against electric shock by deenergizing the circuit and grounding it or by guarding it effectively by insulation or other means.

The Commission found that CMC would have discovered the energized line if it had exercised reasonable diligence. With respect to Taylor's proximity to the line, the Commission concluded both that his job required him to find a location above the conduit to mount a pulley, and that climbing up the pole to do so did not violate any CMC work rule. Further, the Commission observed that CMC did not have any work rules that would prevent an employee from working so close to an energized line that the employee could contact it in the course of his or her work. Accordingly, the Commission concluded that CMC had violated § 1926.416(a)(1).

We note that while CMC petitioned this court for review of whether the Commission correctly concluded that CMC violated § 1926.416(a)(1), it has not addressed the issue in its brief. Therefore, while there is substantial evidence to support the Commission's finding that CMC violated § 1926.416(a)(1), we need not address the issue. *See Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 153 (6th Cir. 1996).

The Commission next addressed CMC's citation for violating 29 C.F.R. § 1926.416(a)(3), which provides:

Before work is begun the employer shall ascertain by inquiry or direct observation, or by instruments, whether any part of an energized electric power circuit, exposed or concealed, is so located that the performance of the work may bring any person, tool, or machine into physical or electrical contact with the electric power

on other jobs—were wearing hard hats while working at the site. The Commission also noted that Smith admitted observing employees on other job sites without hard hats on at least four occasions in the previous seven and one half months, and that he took no action other than to tell the employees that they should wear them. Based on this evidence, the Commission concluded that the Secretary had shown that CMC knew or should have know that its employees were violating the regulation by failing to wear hard hats. The Commission also found that CMC had shown little evidence of an honest effort to ensure compliance or that employees could expect to be reprimanded for failure to wear their hard hats. As a consequence, the Commission concluded that CMC violated § 1926.100(a).

CMC is not a large employer, having only approximately ten employees at the time of the accident. Despite its small size, the record reflects at least five occasions on which CMC employees were not wearing helmets during the past seven and one half months, with CMC apparently taking no action during that time period to enforce its hard hat policy. Significantly, none of the CMC employees at the Cellular One construction site, all of whom had supervised other jobs, were wearing helmets at the time of the accident. Under these circumstances there was substantial evidence upon which the Commission could find that CMC violated § 1926.100(a).

### D. Serious Citation Item 4

The ALJ held that CMC had not violated the standards cited in citation item four, believing that the job could have been safely performed if the employees had been properly instructed about the job and had correctly followed the JX-2 schematic. The Commission reversed the ALJ and affirmed CMC's citation for violating 29 C.F.R. §§ 1926.416(a)(1), (a)(3) and (g)(2)(i)(A). CMC argues that the Commission erred because the energized line was outside the employee's work environment and that Taylor approached the line "on a frolic of his own."

by substantial evidence. *See* 29 U.S.C. § 660(a) (stating: "The findings of the Commission with respect to questions of fact, if supported by substantial evidence, shall be conclusive."). We will also affirm the Commission's conclusions of law unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As a result, we give substantial deference to an agency's construction of its own regulations. *See Martin v. American Cyanimid Co.*, 5 F.3d 140, 144 (6th Cir. 1993). In situations where the meaning of the regulation is not free from doubt, we will give effect to the agency's interpretation so long as it is reasonable, that is, so long as the interpretation "sensibly conforms to the purpose and wording of the regulations." *See Martin v. Occupational Safety and Health Review Comm'n,* 499 U.S. 144, 148–52, 111 S. Ct. 1171, 1175–76, 113 L. Ed. 2d. 117 (1991).

### III.

### A. Serious Citation Item 1

The Secretary asserts that CMC violated 29 C.F.R. § 1926.21(b)(2) by failing to instruct its employees to recognize the dangers of working in close proximity to high-voltage lines and the regulations that applied to the work site. Section 1926.21(b)(2) requires employers to "instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment to control or eliminate any hazards or other exposure to illness or injury." The Commission has interpreted this standard to mean that an employer must instruct its employees in the recognition and avoidance of hazards specific to the work site of which a reasonably prudent employer would have been aware. *See, e.g., Pressure Concrete Constr. Co.*, 15 BNA OSHC 2011, 1992 WL 381670, *5 (December 7, 1992).

The Secretary contends that CMC violated the standard by failing to assure that its employees knew that the line above

them was energized and that they could properly read Edison's JX-2 schematic. Further, the Secretary points out that CMC did not instruct its employees on the restrictions located at 29 C.F.R. § 1926.416, which govern work performed in proximity to an energized line. In response, CMC argues that the energized line was not part of the employee's work environment and that, in any case, the employees were properly trained, because they were taught to always treat a line as energized until they were satisfied that it was not.

The ALJ found that the employees did not understand how to properly read the schematic and did not realize the electrocution hazard that their improper installation of the conduit presented. The ALJ further found that this was not the type of work that the employees usually performed, as demonstrated in part by their confusion on how to use the chugger to pull the wiring up through the conduit. The ALJ concluded that "CMC knew or should have known that its employees assigned to the site had not done this particular work before and that they required instruction on the proper reading of JX-2 and in how to use the chugger such that they could perform the job safely and avoid proximity to the line." The Commission agreed, affirming CMC's citation for violating § 1926.21(b)(2) by failing to train its employees regarding the hazard of working in close proximity to energized high-voltage lines.

CMC argues that the Commission erred in failing to find unforeseeable employee misconduct on the part of Taylor. To establish employee misconduct as an affirmative defense, an employer must carry its burden of showing that due to the existence of a thorough and adequate safety program that is communicated and enforced as written, the conduct of its employee(s) in violating that policy was idiosyncratic and unforeseeable. *See Brock v. L.E. Myers Co., High Voltage Div.,* 818 F.2d 1270, 1276-77 (6th Cir. 1987). CMC relies on general provisions in its safety manual, weekly training in the form of synopses or stories about unsafe conditions and

Unfortunately, on the day of the accident, Taylor, the very person in need of medical attention, was the only one with a valid first aid certificate. Nonetheless, at least with respect to August 15, 1995, CMC satisfied § 1926.50(c)'s requirement that an individual with a valid first aid certificate be present at the work site. Therefore, we vacate the Commission's citation of CMC for violating § 1926.50(c), to the extent that it applies to CMC's conduct on the day of the accident. However, as the Commission observed, Taylor was not on the job site for the first two days of the job. Therefore, we affirm the Commission's citation of CMC for violating § 1926.50(c), insofar as it addresses CMC's failure to assure that an individual with first aid training was present at the site on August 10 and 11 of 1995.

Having vacated the Commission's citation of CMC for violating § 1926.50(b) and (c), to the extent it applied to August 15, 1995, we remand Serious Citation Item 2 to the Commission for reconsideration of the appropriate penalty that should be imposed in light of our holding and the fact that the two violations are for essentially the same conduct.

### C. Serious Citation Item 3

The Commission found that CMC violated 29 C.F.R. § 1926.100(a) by failing to ensure its employees were wearing hard hats. Section 1926.100(a) requires that: "[e]mployees working in areas where there is a possible danger of head injury from . . . electrical shocks and burns, shall be protected by protective helmets." CMC argues that the isolated instances in which its employees violated the regulation are insufficient to establish the propriety of a citation.

In evaluating CMC's citation for violating § 1926.100(a), the Commission observed that none of CMC's employees at the Cellular One site—all of whom had acted as supervisors

---

and (c).

medical attention in case of serious injury. Therefore, we vacate the Commission's citation of CMC for violating § 1926.50(b) to the extent it applies to CMC's conduct on August 15, 1995.

With respect to August 10 and 11, CMC had two employees at the job site with first aid certificates that had expired in 1989. Given the length of time that had passed since their training, CMC could not rely upon either employee to adequately provide first aid. Therefore, we conclude that CMC did not make provisions for prompt medical attention on August 10 and 11 of 1995. Absent the possibility of first aid, a ten minute wait for medical attention could be critical. Consequently, we affirm the Commission's citation of CMC for violating § 1926.50(b) on August 10 and 11.

Section 1926.50(c) is very similar in purpose to § 1926.50(b), complementing and overlapping it by providing:

> In the absence of an infirmary, clinic, hospital, or physician, that is reasonably accessible in terms of time and distance to the worksite, which is available for the treatment of injured employees, a person who has a valid certificate in first aid training . . . that can be verified by documentary evidence, shall be available at the worksite to render first aid.

The ALJ, and apparently the Commission, concluded that CMC violated this provision by failing to have an individual with a valid first aid certificate at the Cellular One work site for at least the two days preceding Taylor's electrocution.[2]

---

[2] The ALJ found that CMC violated § 1926.50(b) and (c), but given the overlap in conduct covered by the standards, decided to find a single violation and penalty and affirmed CMC's § 1926.50(b) citation as a *de minimis* violation. In reviewing the ALJ's decision, the Commission only stated that it found that CMC violated § 1926.50(b), but discussed conduct by CMC relevant to its citation for violating both § 1926.50(b)

hazard recognition, and the fact that its employees were trained to treat all lines as live until the employees were satisfied they were not energized.

The Commission found that there was no evidence that CMC instructed its employees in the recognition of the hazards involved in working in close proximity to energized high-voltage lines. The Commission also concluded that CMC did not have any specific work rules preventing employees from working in close proximity to high-voltage lines. Further, the Commission observed that it was foreseeable that Taylor would approach the high-voltage line because the nature of the job required either the chugger or a pulley be mounted above the conduit in order to pull the wire up through the conduit. Consequently, we find that the Commission's conclusion that CMC had not carried its burden of establishing unforeseeable employee misconduct was supported by substantial evidence. We conclude that under these circumstances there is substantial evidence that the high-voltage line was part of the employee's work environment at the Cellular One job site, and that CMC did not adequately train its employees to recognize the relevant hazards or applicable regulations. Therefore, we affirm the Commission's citation of CMC for violating 29 C.F.R. § 1926.21(b)(2).

## B. Serious Citation Item 2

Both the ALJ and Commission found that CMC violated § 1926.50(b) and (c). Section 1926.50(b) requires that "provisions shall be made prior to commencement of the project for prompt medical attention in case of serious injury." The commission observed that in a best case scenario it would have taken at least ten minutes for the local fire department to reach the site. In light of its holding in *Love Box Co.*, 4 BNA OSHC 1138, WL 5946 (April 7, 1976), the Commission concluded that ten minutes did not qualify as prompt medical attention.

CMC argues that the Commission erred in interpreting "prompt medical attention" as including a per se time limit. We believe that the meaning of "prompt medical attention" is open to question. Consequently we will only give effect to the Commission's interpretation of the phrase if it "sensibly conforms to the purpose and wording of the regulations." *See Martin,* 499 U.S. at 148–52, 111 S. Ct. at 1175–76. Under this standard we conclude that the Commission's attempt to place a per se time limit on what qualifies as "prompt medical attention" is unreasonable.

The Commission concluded that under *Love Box,* a ten minute response time by medical providers would not qualify as prompt under § 1926.50(b). However, the *Love Box* decision does not support the Commission's conclusion. In *Love Box,* the Commission was reviewing a manufacturer's citation for violating 29 C.F.R. § 1910.151(b), which provides: "In the absence of an infirmary, clinic, or hospital in near proximity to the workplace which is used for the treatment of all injured employees, a person or persons shall be adequately trained to render first aid." The Commission noted that no one trained in first aid was working on the manufacturer's second shift and observed that the nearest hospital was a nine minute drive away. The Commission concluded that under the circumstances, the manufacturer had violated § 1910.151(b), because a nine minute drive could not qualify as "near proximity to a hospital." Thus, the Commission's *Love Box* decision not only addresses a different regulation than the one before us, it also addresses a somewhat different concept, i.e., what qualifies as "near proximity" when an employee adequately trained to render first aid is not available.

It is clear that the purpose of § 1926.50(b) is to avoid any unnecessary delay in the administration of medical attention to an injured employee, particularly in the case of serious injury, where even a few minutes can make a difference. *See Brennan v. OSHRC and Santa Fe Transp. Co.,* 505 F.2d 869, 872 (10th Cir. 1974) (noting that "in serious accidents . . .

first aid, to be effective, must be administered within three minutes."). Under the Commission's interpretation, however, CMC would have had to staff the Cellular One work site with medical personnel to conform with § 1926.50(b)'s requirements. We do not believe that the statute places such an onerous burden on an employer operating at a job site such as this one. Rather, the statute should be read to require the employer to take reasonable steps to insure that in case of serious injury, medical attention can be obtained as quickly as possible. In addition to the time it takes to reach medical attention, this analysis should include a review of a variety factors, such as: where the job site was located and how many employees were involved; whether employees were provided with a means of calling for help in an emergency as well as the appropriate emergency numbers; whether the employees had a means of transportation available to them; whether the employer notified local emergency response units that employees would be performing work at a particular site; the availability of first aid equipment; and whether employees with recent first aid training were at the site. *C.f.* § 1926.50(c)–(g) (1996) (listing similar requirements).

While the Commission did not conduct such an analysis, it did note that CMC's employees were approximately ten minutes from medical attention and that the employees had a cellular phone with which they could call for help. Further, the Commission observed that Taylor had a current first-aid certificate and that Breedlove and Biacofsky had received first aid training in 1987. Despite this, the Commission concluded that "[t]here is no evidence in the record that CMC made provisions prior to commencement of the project for prompt medical attention." We draw a different conclusion. As the Commission observed, on the day of the accident CMC had an employee with a valid first aid certificate on the job site. CMC also provided a cellular phone in an area that supported 911 and had emergency medical services that could have reached the job site within ten minutes. Under these circumstances, the Commission abused its discretion in concluding that CMC did not make provisions for prompt