**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0192n.06

**No. 09-3449**

**FILED**

**Mar 25, 2010**

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

AEROSPACE TESTING ALLIANCE,

     Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH
REVIEW COMMISSION,

     Respondent.

_____/

O N   A P P E A L   F R O M   T H E
OCCUPATIONAL SAFETY AND
HEALTH REVIEW COMMISSION

OPINION

BEFORE:    CLAY and McKEAGUE, Circuit Judges; POLSTER, District Judge.[*]

    **CLAY, Circuit Judge.** Aerospace Testing Alliance, Inc. ("ATA") petitions for review of a final agency decision of the Occupational Safety and Health Review Commission finding an other-than-serious violation and assessing a $1,400 fine. An Administrative Law Judge ("ALJ") found that by failing to provide a guard for two lathes at its facility, ATA had violated a standard promulgated pursuant to the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651-78. ATA petitions for review, arguing that substantial evidence did not support the Commission's decision, that the ALJ failed to properly apply guidance documents issued by the Occupational Safety and Health Administration, and that the ALJ improperly rejected ATA's "greater hazard" defense. For the following reasons, we **DENY** ATA's petition for review.

_____

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation

## FACTS

On May 12, 2008, the Occupational Safety and Health Administration ("OSHA") inspected ATA's workplace at the Arnold Engineering Development Center Air Force Base in Tullahoma, Tennessee. Following the inspection, OSHA issued a citation and notification of penalty based on a failure to provide proper guards on two lathes in violation of 29 C.F.R. § 1910.212(a)(1). The citation was issued based on the failure to provide guards for a Lodge and Shipley lathe and a Harrison AA lathe. The Lodge and Shipley lathe was larger and less frequently used. OSHA classified the violation as a serious violation and imposed a $2,125 penalty.

On November 14, 2008, a hearing was held on the citation before an ALJ. At the hearing, six witnesses testified, two for OSHA and four for ATA. Michelle Stoak was the OSHA employee who performed the inspection. William Cochran was the area director of the local OSHA office who attended the inspection of ATA to evaluate Stoak. ATA first called Catherine Plunkett, the director of the safety and health group at ATA who testified about ATA's efforts at finding a satisfactory lathe guard. Supervisor Greg Otwell, a long-term employee, testified briefly about historical efforts of ATA to find guards for the lathes. ATA's next witness was Scott Pogue, who was the machinist who most frequently used the lathes. Finally, Frank Kelly, a safety and health professional for ATA, testified about ATA's response to the citation and its alleged inability to find a satisfactory guard.

Pogue testified that when he used the lathes, they rotated at a speed of 625 rpm or less. Pogue used the Harrison lathe on a monthly basis, and several other people use the machines with even less frequency. The lathes are both manual lathes that are used for very precise work, such as making special thickness washers, and the work is precise to a level of "a couple ten-thousandths of an inch." (Appx. 119). Due to the required precision, the work was done very close to the unguarded chucks. For the finest details, the jaws holding the piece the operator was working on

protruded only two inches from the chuck, and the employee's hands could be within two inches of the work. ATA admits that it is possible for an operator's hands to come into contact with the face of the chuck. Cochran testified that "cuts, contusions, [and] potentially broken fingers" could result from coming into contact with "the key openings on the periphery of the chuck as well as the irregular shape of the jaws of the chuck." (Appx. 171-72). Testimony from ATA's employees downplayed the possibility of injuries, never suggesting broken fingers could occur. This testimony, however, was premised on the theory that employees complied with company procedure banning loose clothes, rings, and gloves while operating the lathes. No injury resulting from these lathes was put into the record, and Otwell testified that, to his knowledge, none had occurred.

Otwell testified that the Lodge and Shipley lathe likely was procured in the 1950s. When the Harrison lathe was procured in the late 1980s, it did not have a guard or a place where a guard could be fitted. In the early 1990s, an employer-wide movement to improve safety by placing guards on all rotating equipment led to the placement of guards on these two lathes. Otwell testified the guards were taken off after several years because of several "near misses." (Appx. 107). The problems were that the guards blocked the operator's vision and that if the operator got his hands too close to the chuck, the natural reaction was to "jerk back," which would cause the operator to hit the shield and force his hands back towards the chuck. Otwell acknowledged that it would not have caused a "large injury" but thought it could cause "small abrasions." (Appx. 107-08).

Following the citation, ATA experimented with a variety of lathe guards and found them unsatisfactory. Plunkett testified that the guards were not satisfactory because the guards could create a "pinch point" that would not otherwise exist if the hand could leave the area freely. (Appx. 73). Kelly testified that a guard could be safely placed around the periphery of the machines but that "the guard does not bring anything of value in mitigating or eliminating the hazards to the operations

for which they utilize it." (Appx. 139). Cochran, however, testified that guards exist for Harrison lathes generally and that while it was uncertain whether an exact guard existed for the lathes in question, "you could fabricate something like this or purchase something like this either from the manufacturer or from a machine-guarding company." (Appx. 59-60). These proposed guards are "moveable barrier" guards that can be moved up and down as needed to allow the operator closer access to the machine as necessary for the detailed work performed on these lathes.

On February 22, 2009, the ALJ issued a decision and order affirming the violation as "other-than-serious" and assessing a $1,400 penalty. ATA submitted a petition for discretionary review to the OSHA Review Commission. The commission declined to review the ALJ's decision and order. ATA filed a timely petition to this Court pursuant to 29 U.S.C. § 660(a).

## DISCUSSION

## I.

### A. Standard of Review

In reviewing the Commission's decision, we uphold the Commission's findings of fact so long as they are supported by substantial evidence. *CMC Elec., Inc. v. Occupational Safety and Health Admin.*, 221 F.3d 861, 865 (6th Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *National Engineering & Contracting Co. v. Herman*, 181 F.3d 715, 721 (6th Cir. 1999) (citations and quotations omitted). "The substantial evidence test protects both the factual findings and the inferences derived from them, and if the findings and inferences are reasonable on the record, they must be affirmed even if this court could justifiably reach a different result *de novo*." *Id*. We affirm the Commission's conclusions of law unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *CMC Elec.*, 221 F.3d at 865 (quoting 5 U.S.C. § 706(2)(A)).

**B.     Analysis**

ATA was accused of violating 29 C.F.R. § 1910.212(a)(1).  That regulation deals with "machine guarding" and states that "[o]ne or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks."  29 C.F.R. § 1910.212(a)(1).  To establish a violation of the Act, the Secretary must show by a preponderance of the evidence that (1) the cited standard applies to the facts, (2) the requirements of the standard were not met, (3) employees had access to the hazardous condition, and (4) the employer knew or could have known of the hazardous condition with the exercise of reasonable diligence.  *Carlisle Equipment Co. v. United States Secretary of Labor*, 24 F.3d 790, 792 (6th Cir. 1994).[1]

ATA's primary contention is that the Commission has adopted a position that fails to actually prove a violation.  ATA claims the Commission has only shown that the face of the chuck leads to injuries, while a guard is only feasible over the periphery of the chuck.  This is simply not correct.  The ALJ clearly found that the periphery of the chuck posed a danger, and this conclusion is supported by substantial evidence.  The ALJ noted testimony from Kelly that "it is possible for an employee's hand to come in contact with the face of the chuck while performing this work."  The very next sentence of the ALJ's opinion states:  "Employees work within inches of the periphery of the chucks."  Furthermore, ample testimony was provided that long hair, jewelry, or loose clothes

---

[1]In briefing, ATA argued that 29 C.F.R. § 1910.212(a)(1) is not applicable because a more specific regulation, § 1910.212(a)(3), actually provides the appropriate standard.  Section 1910.212(a)(1) speaks to general types of machine guarding, while § 1910.212(a)(3) provides more specifically the requirements for "point of operation guarding."  The Court does not have jurisdiction to consider the argument because it was not made to the Commission.  "No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."  29 U.S.C. § 660(a).  Review by the Commission "is a necessary prerequisite to review by this Court."  *National Engineering & Contracting, Co. v. Herman*, 181 F.3d 715, 720 (6th Cir. 1999).

could be caught in the periphery. (Appx. at 21, 55, 75-76, 99, 143-44, 171). ATA's own protocols appear to recognize this potential risk because jewelry, long hair, and loose clothing is already forbidden. When Kelly testified that guards around the periphery would not serve a purpose, he presumed the employee had "no loose clothing, no jewelry, no long hair, no things that would actually spin into and get caught around that chuck." (Appx. 144).

The fact that the employees are trained and prohibited from wearing loose clothing and jewelry does not mean that the rules will always be followed or that a mistake will not be made. The Secretary notes that Plunkett, an ATA employee, acknowledged that ninety percent of accidents occur because of "operator error, operator attitude or a person did something that put themselves in harm's way." (Appx. 80). The relevant regulation calls for "one or more methods of machine guarding" to protect the operator. Petitioner's own witness admitted that a guard could be fashioned to at least protect against contact with the chuck periphery. Kelly testified: "A different guard that is thinner, that does not come out over what we call the point of operation but strictly is over the periphery of the chuck itself, that would not create any kind of additional hazard." (Appx. 160). Kelly also testified that it would not provide any benefit, but the ALJ disagreed, and substantial evidence supports that determination. Since the periphery can be safely guarded, the fact that ATA has additional safety precautions does not excuse compliance with binding regulations. For these reasons, substantial evidence supports the finding of a violation.

At a minimum, ATA has the responsibility to guard the periphery of the chuck, which would support the Commission's finding of the other-than-serious violation and the $1,400 penalty. The ALJ's opinion itself primarily stands for this limited proposition. The most aggressive the ALJ gets in guarding other parts of the machine is acknowledging Cochran's testimony that "a guard previously attached to the lathe by Respondent could be modified to cover the periphery and the

irregular shaped jaws." (ALJ Op. at 4). At oral argument, it appeared uncontested that the face of the chuck could not be entirely guarded. Some dispute remains about whether the jaws of the chuck could be safely guarded. The ALJ does not clearly articulate whether he believed OSHA or ATA's witnesses on the feasibility of placing a guard over the jaws of the chuck. The ALJ appears to avoid this issue, dismissing ATA's feasibility claim merely by citing Kelly's testimony that a guard over the periphery is feasible. Since substantial evidence supports a finding that the periphery poses a danger, the petition for review is denied, and we need not reach the issue of the extent of what the guard should cover.[2]

The fact that the Commission's application of the binding regulations is supported by substantial evidence undermines the rest of ATA's arguments. ATA argues it complied with the relevant standard based on its supposed compliance with a 1979 Letter of Interpretation from OSHA. The letter of interpretation states: "When the work holding or driving device in the clamped mode has components that extend beyond the outside diameter of the holding device; or the periphery of the body of the holding device is of irregular shape . . . a fixed or moveable guard, device, awareness barrier, or peripheral cover over area exposed to the operator shall be required." Crucially, this letter of interpretation does not overrule the plain requirements of the binding regulations. The Secretary properly argues that the letter of interpretation does not present the "*only* situations where the OSHA standard requires guarding." (Secretary's Br. at 43, n.11).

Even if the letter of interpretation were the sole determinant of a violation, ATA's argument would still fail. The ALJ found that the periphery of the chucks were "irregular on both lathes" and

---

[2]Of course, ATA must comply with 29 C.F.R. § 1910.212(a)(1). Whether that means installing a guard over the jaws of the chuck is not before this Court. In testimony, Cochran stated that the guard should cover the jaws as well as the chuck "as much as possible" and noted that it was "subject to experiment." Multiple witnesses for Respondent testified that a guard covering any part of the face of the chuck was not workable.

noted testimony that "in the periphery of the chucks there are recesses for the chuck keys and where the jaws move in and out of the chucks." (ALJ Op. at 3). While these irregularities may not provide the danger of some of the irregularities in the jaws and face of the chuck, the factual finding that they are "irregular" is supported by substantial evidence.

ATA also argues that it complied with the letter of interpretation by performing its own thorough evaluation. The letter of interpretation states: "All work-holding devices do not require guarding. Therefore, a thorough evaluation must be conducted of the work-holding devices." (Appx. 191).[3] ATA cites testimony by two employees, Plunkett and Kelly, that a "thorough evaluation" had been performed but that ATA concluded "that guards were unnecessary because they would not eliminate or mitigate the hazards presented by the actual uses of the lathes." (Petitioner Br. at 27). ATA also argues that it complied with a 2001 American National Standards Institute ("ANSI") standard on the issue, focusing on the fact that the lathes at issue are manual rather than automatic. Section 6.1 of ANSI B11.6 calls for chuck guards "as required." Section 8.1 notes that

> where an immediate or impending hazard exists an employer may provide
> (a) guard(s);
> (b) safeguarding device(s);
> (c) awareness barriers and device(s);
> (d) safe work procedures.
>
> The selected means of safeguarding shall be consistent with identified hazards and their associated risks.

---

[3]The Commission's finding that these lathes require guards of the periphery does make it unlikely that any lathe could not be guarded. The letter of interpretation relied on by ATA, however, refers to all work-holding devices, not merely lathes. The exception is therefore not rendered meaningless by the Commission's determination that these lathes require guards.

(Appx. 228).[4]

ATA's reliance on the letter of interpretation and the ANSI standard is unavailing. Both of these cited standards indicate that a guard is not always required. Nobody argues that a guard is always required. The fact that guards are not always necessary does not mean that they are not necessary in this case. The Secretary has proved a violation of § 1910.212(a)(1) based on a showing that the periphery poses a danger, and ATA's own admission that a guard could safely guard the periphery of the chuck. The logical flaw in ATA's argument is the belief that ATA itself can always determine whether a guard is necessary. It cites to testimony from Kelly, its own employee, that the lathes are operated safely during the gauging process. (Appx. 155). The ANSI standard requires ATA to do an evaluation and determine whether a guard is necessary. If ATA makes the incorrect determination, it is not shielded from the clear commands of § 1910.212(a)(1) that require guarding merely because it conducted an evaluation. Such an exception to compliance with the regulation would effectively eviscerate it, allowing companies to perform "evaluations" that were immune from review by the Commission.

ATA's petition must be denied because the Commission reasonably determined based on the evidence presented that the periphery of the chuck posed a danger. ATA itself admits that a guard covering the periphery is feasible. Therefore, the Commission's determination that the failure to guard the periphery is an other-than-serious violation is supported by substantial evidence.

We acknowledge that since the face of the chuck cannot be guarded, the most serious danger these lathes present remains ever-present. What ATA has done, however, is to miss a smaller danger based on its determination that a more serious danger cannot be prevented. The Commission appears

---

[4]Similar to the letter of interpretation, the ANSI standard cannot be used to rebut the actual OSHA standard as expounded in its binding regulations.

to have recognized this, downgrading the violation to "other -than-serious" and lowering the fine to $1,400. The decision that the failure to guard the periphery of the chuck violates 29 C.F.R. § 1910.212(a)(1), however, is undoubtedly supported by substantial evidence.

**II**.

ATA also argues that it satisfied the affirmative defense of "greater hazard." OSHA regulations state that any machine guard "shall be such that it does not offer an accident hazard in itself." 29 C.F.R. § 1910.212(a)(2). ATA argues that a guard would create "trapping points," "nipping points," and "shearing points" contrary to the ANSI standard which indicates that a manual tool indexer shall be safeguarded to protect against just such dangers.

ATA is likely precluded from making this argument because it failed to seek a variance from the requirements of the guarding standard. The Ninth Circuit has held that a petitioner's "failure to seek a variance is sufficient alone to sustain the administrative law judge's rejection of petitioner's defense that available machine guards would have created a greater hazard than the unguarded [machine]." *True Drilling Co. v. Donovan*, 703 F.2d 1087, 1091 (9th Cir. 1983). *See also Modern Drop Forge Co. v. Secretary of Labor*, 683 F.2d 1105, 1116 (7th Cir. 1982) (holding that "[i]f the greater hazard defense could be raised in an enforcement proceeding without first exhausting the variance procedure, employers would tend to bypass that procedure"); *General Elec. Co. v. Secretary of Labor*, 576 F.2d 558, 561 (3d Cir. 1978) (finding that if "a 'greater hazard' defense is allowed at an enforcement proceeding without requiring initial resort to the variance procedures or a showing that such resort would be inappropriate, there would be little incentive for an employer to seek a variance under these circumstances"). This Court has never squarely decided this issue. In the context of a petitioner attempting to present an "impossibility" defense, we declined to decide whether exhausting the variance procedure "is required or is merely to be preferred" but in any event,

"the fact remains that an employer which has not previously sought a variance or modification starts with a distinct disadvantage when it claims impossibility in an enforcement proceeding." *Diebold, Inc. v. Marshall*, 585 F.2d 1327, 1339 (6th Cir. 1978).

Even if we could reach the merits, the argument must fail because of Kelly's unambiguous testimony. He testified that the periphery of the chuck could be safely protected. Therefore, once it is determined that the periphery poses a danger, it is certainly not a greater hazard to protect it. Substantial evidence supports the Commission's determination that the periphery of the chuck poses a danger and that a guard over the periphery does not create an additional danger.

## CONCLUSION

For the foregoing reasons, we **DENY** ATA's petition for review of the Commission's finding of an other-than-serious violation.