796 A.2d 63

**MARYLAND COMMISSIONER OF LABOR AND INDUSTRY,**

v.

**COLE ROOFING CO., INC.**

**No. 70, Sept. Term, 2001.**

Court of Appeals of Maryland.

April 9, 2002.

Andrew H. Baida, Solicitor General (J. Joseph Curran, Jr., Atty. Gen. of Maryland, and Gaston J. Sigur, III, and Jonathan R. Krasnoff, Asst. Attorneys Gen., on brief), Baltimore, for petitioner.

Frank L. Kollman (Bruce M. Luchansky of Kollman & Saucier, P.A., on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

WILNER, Judge.

This appeal arises from a final order of the Commissioner of Labor and Industry entered under the Maryland Occupational Safety and Health Act (Maryland Code, §§ 5–101 through 5–901 of the Labor and Employment Article) (MOSHA). It presents two issues:

(1) When an employer is charged with a MOSHA violation and claims that the violation was due to unforeseeable or unpreventable employee misconduct, who has the burden of proof on that issue: must the Commissioner prove that the employee misconduct was foreseeable or preventable, or must the employer prove that it was not; and

(2) In order to establish a "repeated" violation under MOSHA, must the Commissioner show that the earlier violation involved precisely the same regulation or conduct or will it suffice to show that the earlier violation was of a similar regulation addressing a similar hazard or condition?

■ The Court of Special Appeals concluded, with respect to the first issue, that the Commissioner bears the burden of proof, and, as to the second, that the two violations must be of the same regulation. *Commissioner of Labor v. Cole*, 138 Md.App. 526, 772 A.2d 1252 (2001). We agree with the second conclusion, but not the first.

## BACKGROUND

The Labor and Employment Article (LE) § 5–104(a) requires employers to provide workplaces that are safe, health-

ful, and free from recognized hazards that are causing or are likely to cause death or serious physical harm to their employees. That is known as the general duty requirement. Section 5–104(b) requires that both employers and employees comply with applicable regulations adopted under the Act. That is the special duty requirement. MOSHA places overall responsibility for enforcement of the Act with the Commissioner of Labor and Industry and, among other things, empowers the Commissioner, (1) to adopt regulations to prevent conditions in workplaces that are detrimental to safety and health, (2) to conduct inspections of workplaces, (3) to issue and enforce citations, (4) to provide a hearing if the employer contests a citation, and (5) to make final agency decisions and assess penalties upon the finding of violations.

MOSHA is modeled on the Federal Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C.A. §§ 651–678 (2001), and tracks the Federal law in most respects. *Com'r of Labor v. Bethlehem Steel,* 344 Md. 17, 30, 684 A.2d 845, 851 (1996).[1] Pursuant to the authority set forth in LE §§ 5–309 to 5–312, the Commissioner has adopted, by incorporation, the Federal construction standards approved under OSHA by the U.S. Secretary of Labor. 29 C.F.R. pt.1926 (2001). MD. REGS.CODE (COMAR) 09.12.31 (2001); *J.I. Hass Co. v. Dep't of Lic. and Reg.,* 275 Md. 321, 328, 340 A.2d 255, 259 (1975). Among the Federal construction standards adopted by the Commissioner

---

1. One difference between the two Acts is in the administrative structure. Under MOSHA, the Commissioner of Labor and Industry is charged with full responsibility for enforcement, including the adoption of standards under LE § 5–104(b), issuing citations, and finally resolving contests over citations, although the Commissioner has delegated to the Office of Administrative Hearings responsibility for conducting hearings and making recommendations for disposition and may delegate to a Deputy Commissioner responsibility for reviewing the Administrative Law Judge's proposed order and making the final agency decision. Judicial review is of the Commissioner's final order. Under OSHA, the Secretary of Labor adopts the standards and issues citations. Hearings are conducted by an Administrative Law Judge, but it is the Occupational Safety and Health Review Commission (OSHRC) that makes the final agency decision in contested cases. The Secretary is a party to the case before OSHRC. Judicial review of OSHRC orders is in the Federal courts of appeal.

are those codified in 29 C.F.R. § 1926.501, which requires employers to provide fall protection systems for their employees, and those in § 1926.152, dealing with the storage of flammable and combustible liquids.

The fall protection requirements set forth in § 1926.501 address a wide variety of situations, including employees constructing leading edges, working in hoist areas, near holes, on the face of formwork or reinforcing steel, on ramps or other walkways, at the edge of excavation sites, or near dangerous equipment, doing roofing work on low-slope roofs, being present on steep roofs, erecting precast concrete members, engaged in residential construction, or working near wall openings or on "walking/working" surfaces. Each of these situations is addressed in a separate paragraph of that regulation.

The fall protection standard at issue here is that dealing with working on low-slope roofs, defined in 29 C.F.R. § 1926.500(b) as a roof having a slope less than 4 in 12 (vertical to horizontal). Section 1926.501(b)(10) requires, in relevant part, that:

"each employee engaged in roofing activities on low-slope roofs with unprotected sides and edges 6 feet (1.8 m) or more above lower levels shall be protected from falling by guardrail systems, safety net systems, personal fall arrest systems, or a combination of warning line system and guardrail system, warning line system and safety net system, or warning line system and personal fall arrest system, or warning line system and safety monitoring system."

On July 29, 1997, respondent, Cole Roofing Company, Inc. (Cole), was engaged in installing or repairing a flat roof at Chesapeake High School in Pasadena. As the roof was more than six feet above ground, § 1926.501(b)(10) was applicable. Just before 9:00 that morning, Amy Agro, an inspector from the Maryland Occupational Safety and Health Unit at the Division of Labor and Industry (MOSH), appeared at the job site for a planned inspection and saw at least five employees, including a foreman, Joseph Baldwin, working on the roof,

which was at least eleven feet above a concrete area. Some of the employees were observed working in close proximity to the roof edge. Roofing materials that likely would be needed by the employees were also seen near the edge of the roof. Ms. Agro saw no fall protection system in place—no warning lines, no guardrail, no safety net, no personal fall arrest system, no safety monitors. Shortly after she arrived, a Cole Vice President, James Canoles, appeared, and she conferred with him and Mr. Baldwin. She learned that as many as fifteen employees had been working on the roof that morning.

The employees informed Ms. Agro that two safety monitors were on the site, but the persons they identified as the safety monitors did not qualify as such, at least for MOSHA purposes.[2] Mr. Canoles and Mr. Baldwin told her that they were using a safety monitor system along with warning lines, but, apart from the lack of persons qualifying as safety monitors, she also saw no warning lines. They then asserted that the warning lines had been up the previous day and had been removed. While she was there, warning lines were installed on the roof and a safety monitor was designated and instructed as to his duties.

Because the employees were working eleven to twelve feet above concrete pads, Ms. Agro was concerned that, had any of them fallen, serious physical injury could have resulted. She therefore regarded the violation as a "serious" one. LE § 5–809(a)(1) states that a violation is considered to be a serious one "if there is a substantial probability that death or serious physical harm could result ... unless the employer did not and with the exercise of reasonable diligence could not know of the violation." Because she learned that, in July, 1995, Cole had been cited for a violation of § 1926.501(b)(11)—failure to

---

2. A safety monitor is a person whose sole responsibility is to watch the other workers and warn them if they get too close to the edge of the roof. Ms. Agro explained that, under MOSHA standards, a safety monitor may have no other substantial duties-nothing to distract his or her attention. She noted that the two persons identified as safety monitors were busy installing flashing and roofing paper, and therefore did not qualify as safety monitors.

have in place fall protection on a steep-slope roof—she regarded the instant violation as a "repeated" one as well. The citation for the fall protection violation therefore charged a serious and repeated violation.

During her inspection, Ms. Agro also observed on the ground a five-gallon gasoline can that had no flash arresting mechanism or self-closing lid. Section 1926.152(a)(1) provides, in relevant part, that only approved "safety cans" or containers approved by the U.S. Department of Transportation may be used for storing and handling flammable and combustible liquids of five gallons or less. Section 1926.155($l$) defines a "safety can" as an approved closed container having a flash arresting screen, spring closing lid and spout cover and so designed that it will safely relieve internal pressure when subjected to fire exposure. After concluding that the can did not meet those requirements and that the violation also was a serious one, she issued a second citation with respect to the can. Acting pursuant to LE § 5–809(a)(2), the Commissioner assessed a civil penalty of $3,000 for Citation 1 and a $262 penalty for Citation 2.

Cole filed a timely notice of contest, and a hearing was conducted before an Administrative Law Judge (ALJ). Although the substantive issues raised by Cole were whether there was sufficient evidence to support the two citations and whether the penalties were correctly calculated, Cole raised as well whether the violations were the product of unpreventable supervisor misconduct, and whether the 1995 violation sufficed to make the § 1926.501(b)(10) violation a repeated one.

Both of those issues arose during the testimony of Ms. Agro, in the presentation of the Commissioner's case. When asked whether there were any facts indicating that Cole had knowledge of the condition, she responded that Canoles and Baldwin, who were both management officials, were on-site while the employees were exposed. Baldwin had been working on the roof. Canoles was not on the site when she arrived, but Agro was told that he had been there and was on his way back. The conditions that led to the two citations were not abated until after his arrival. Baldwin's actual involvement in

the violation for lack of fall protection formed part of her contention that the employer had knowledge of the violation. With respect to the gasoline can, she said that another roof foreman, Dennis Johnson, was exposed to the condition and had done nothing to correct it.

At the conclusion of Ms. Agro's testimony, which constituted the Commissioner's case, Cole moved to dismiss the citations on the ground that it was the Commissioner's burden, in its case-in-chief, to prove the absence of unpreventable employee misconduct. The Commissioner contended that unpreventable employee misconduct and unforeseeable conditions were affirmative defenses that must be established by the employer. Although one decision, *L.R. Willson & Sons, Inc. v. OSHRC*, 134 F.3d 1235 (4th Cir.), *cert. denied*, 525 U.S. 962, 119 S.Ct. 404, 142 L.Ed.2d 328 (1998), was cited, neither that case nor other unnamed ones referred to by the Commissioner had previously been supplied to the ALJ, and, not having had the opportunity to read the cases, he denied Cole's motion at that point.

Cole's case was presented by its president, William R. Cole, who identified the written safety handbook used by the company. He said that, pursuant to the company's safety plan, safety monitors were appointed, but he acknowledged that those monitors performed other job duties as well. He conceded that Baldwin, the company supervisor on the job, had violated his duties under the company's safety plan and claimed that Baldwin was solely responsible for the MOSHA fall protection violation. Mr. Cole said that Baldwin had a good safety record and, as a result, was merely counseled and required to attend additional safety training. He was not given a written warning, although the company's safety handbook provided for such a warning for the violation. None of the other employees who were on the job and who, under the company safety plan, had a duty to report violations, were disciplined for their failure to make such a report. Mr. Cole said that, at the time of the infractions, the job was winding down. Although he had made safety inspections at the job site on earlier occasions and never saw a problem, he had not

been there in recent days. Canoles, he said did not have direct safety responsibility and was not at the job site very often.

In a Proposed Decision filed in August, 1998, the ALJ recommended that the two citations and penalties be sustained. He found the facts to be essentially as testified by Ms. Agro, none of which were in substantial dispute. With respect to the fall protection violation, he concluded that (1) to establish a violation, the Commissioner was required to prove that the standard at issue applies, the employer failed to comply with the standard, employees were exposed to the violative condition, and the employer knew or, with the exercise of reasonable diligence, should have known of the condition, and (2) the evidence sufficed to establish each of those elements. Cole's "unforeseeable or unpreventable employee misconduct" defense, the ALJ said, was an affirmative defense, to which the employer had the burden of proof.

Citing several decisions, the ALJ stated that, to establish that defense, the employer was required to prove that, (1) it had an established work rule mandating the conduct required by the MOSHA standard at issue, (2) the work rule had been clearly communicated to employees, (3) the employer had taken steps to ensure that the work rule was obeyed and to discover violations of it, and (4) the employer administers some kind of discipline when it discovers violations of the rule. He found that Cole did have written safety work rules and worker training programs but concluded, from the fact that no steps were taken to ensure that fall protection rules were followed on the day of the inspection, that Cole had not sufficiently communicated its work rules to the employees, and from the facts that none of the employees who were working in violation of the MOSHA standards reported the violation, as they were required to do under the company rules, or were disciplined for failure to make such a report, that Cole did not take its work rules seriously. Noting that Cole had focused its attention not on the misconduct of the several employees working on the roof but only on that of Baldwin, the ALJ observed that, although admitting that Baldwin had violated

the company's work rules, he was issued only an oral repri-
mand and not the written warning required in the safety
handbook. For those reasons, the ALJ found that Cole had
failed to establish the unpreventable employee misconduct
defense as to the fall protection violation. He drew a similar
conclusion, for similar reasons, with respect to the gasoline
can violation.

Upon Cole's request for further review, the Deputy Com-
missioner of Labor, in a final agency decision, adopted the
ALJ's reasoning and his proposed disposition. On the issue of
unforeseeable or unpreventable employee misconduct, the
Deputy Commissioner noted that, although the U.S. Court of
Appeals for the Fourth Circuit, in *Willson, supra,* had held
that the Government bears the burden of establishing that the
conduct was foreseeable or preventable, a majority of the
Federal courts and the Occupational Safety and Health Re-
view Commission (OSHRC) itself took the contrary position—
that unforeseeability or unpreventability was an affirmative
defense, to which the employer had the burden of proof. She
noted that, in previous Maryland cases, the Commissioner had
also taken that approach. Drawing from some of the decisions
she found persuasive, she opined that, in an employee miscon-
duct case, the focus is on the effectiveness of the employer's
implementation of its safety program, that information regard-
ing that implementation will be in the hands of the employer,
and that it was not unduly burdensome to require the employ-
er to come forward with that information. That was especially
true, she concluded, when the alleged misconduct is on the
part of a supervisory employee; the employer must then show
that it took all feasible steps to prevent the condition, includ-
ing adequate instruction and supervision of the supervisory
employee. Applying those concepts, she determined that,
although Cole had written safety work rules, the record
supported the ALJ's finding that Cole had exhibited a pattern
of ineffective communication and enforcement of those rules.

With respect to the repeated nature of the violation, the
Deputy Commissioner found that the characterization as re-
peated was not limited to subsequent violations of the same

standard. The purpose of the enhanced penalty for repeated violations, she said, was to ensure adequate employer response to an earlier citation, and she regarded the standards set forth in paragraphs (10) and (11) of 29 C.F.R. § 1926.501(b) as sufficiently similar to warrant the extra penalty. She also concluded that there was sufficient evidence to sustain the citation regarding the gasoline can.

Cole sought judicial review in the Circuit Court for Anne Arundel County, where it got partial relief. The court adopted the approach in *Willson* and concluded that the Commissioner bore the burden of proving foreseeability and preventability. It agreed with the Deputy Commissioner's conclusion that the violation was a repeated one, however, as well as her determination regarding the gasoline can citation. The ultimate judgment was a reversal of the agency order and a remand for further proceedings. On cross-appeals, the Court of Special Appeals agreed with the Circuit Court that the Commissioner bore the burden of proof as to foreseeability and preventability, but disagreed with its determination that the violation was a repeated one. Relying on our decision in *Com'r of Labor v. Bethlehem Steel, supra,* 344 Md. 17, 684 A.2d 845, the intermediate appellate court concluded that, for a violation to be repeated, the "same standard" must be violated more than once and that there must be a substantial similarity of elements in the two violations and held that the two standards at issue here were not substantially similar. It affirmed the judgment with respect to the gasoline can citation but reversed the judgment entered as to the fall protection and directed a remand to the Commissioner for a new hearing as to that violation. It is the Commissioner who now feels aggrieved and who petitioned for *certiorari* on the two issues first noted. Cole has apparently acquiesced in the decision regarding the gasoline can, as there was no cross-petition.

## DISCUSSION

### Burden of Proof

The precise issue of who has the burden of proof with respect to whether a condition created by employee or super-

visor misconduct was foreseeable and preventable is one of first impression in Maryland.[3] Because, as noted, MOSHA is modeled closely after OSHA, we have often turned to Federal decisions for guidance in interpreting MOSHA. *Com'r of Labor v. Bethlehem Steel, supra,* 344 Md. at 30–31, 684 A.2d at 851. The Federal courts that have addressed the issue under OSHA are not in agreement. The majority of them hold that non-preventability of employee or supervisor misconduct is an affirmative defense on which the employer bears the burden of pleading and proof; some, including the Court of Appeals for the Fourth Circuit, have concluded otherwise. We shall side with the majority, because we think it is the more modern and better-reasoned view.[4]

The preventability issue sometimes becomes entwined with the very different but overlapping issue of whether and to what extent the employer must have knowledge about the hazard in order to be subject to penalty, and the burden of proof question is often considered in that light.[5] The knowl-

---

**3.** In *J.I. Hass Co. v. Dep't of Lic. and Reg., supra,* 275 Md. at 330–32, 340 A.2d at 260–62, we cited with approval a number of Federal cases and OSHRC decisions that placed the burden of proving preventability on the Secretary, but we did not cite those cases for that proposition and did not address the issue ourselves.

**4.** The Supreme Court was presented with the issue fifteen years ago in a petition for *certiorari* in *L.E. Myers Co., High Voltage Division v. Secretary of Labor,* 484 U.S. 989, 108 S.Ct. 479, 98 L.Ed.2d 509 (1987), but, by denying the petition, decided not to address it. Dissenting from the denial, Justice White, joined by Justice O'Connor, noted "the already confusing patchwork of conflicting approaches to this issue" and that the "conflict among the Circuits shows no sign of abating." *Id.* at 990, 108 S.Ct. at 479–80, 98 L.Ed.2d at 509.

**5.** The issues are different because, if the violation is observed by or participated in by a supervisor, knowledge of it may be imputed to the company. Proof that a supervisor was involved may thus suffice to establish the requisite knowledge on the part of the employer. That imputation does not necessarily preclude a finding that the violation was so isolated, unexpected, or idiosyncratic as to be regarded as unpreventable, however. The clearest case of overlap arises when there is no basis for imputed knowledge and the violation was indeed isolated and unexpected, as the employer will then claim from the unexpected nature of the violation both lack of knowledge and unpre-

edge requirement arises from a provision that, on its face, is limited to serious violations. 29 U.S.C. § 666 and LE § 5–809 provide penalties for various kinds of violations, including "serious" violations. Section 666(k), and, with mere style differences, LE § 5–809(a), define "serious violation" for that purpose as one in which there is a substantial probability that death or serious physical harm could result from the condition "unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."

That conditional language does not appear elsewhere in the statute. By case law, however, that statutory condition of actual or constructive knowledge has been extended to all violations—serious and non-serious—whether under the general duty clause or of a specific standard. *See Brennan v. Occupational Safety & Health Rev. Com'n,* 511 F.2d 1139, 1143 (9th Cir.1975); *J.I. Hass Co., supra,* 275 Md. 321, 340 A.2d 255. Once so extended, it tended to drive the courts' consideration of the preventability issue and, with it, the burden of proof issue. The initial coupling of knowledge/preventability and burden of proof came in the context of general duty violations and an OSHRC regulation, 29 C.F.R. § 2200.73(a), that was in force between 1972 and 1986. In the earlier cases, which mostly involved the general duty clause, concern was expressed about whether, given the breadth of that duty, the absence of some obligation on the part of the Secretary to establish what the employer could have done differently could, in effect, make the employer's duty one of strict liability. The cases need to be read with those considerations in mind.

In *National Realty & C. Co., Inc. v. Occupational S. & H.R. Com'n,* 489 F.2d 1257, 1266 (D.C.Cir.1973), the court, dealing with an alleged violation under the general duty clause, held

---

ventability. Certainly in that setting, and even when there is some supervisor involvement, the focus, with respect to both issues, will be on the employer's efforts to avoid the problem, and the evidence as to both knowledge and preventability will often be the same. *See New York State Elec. & Gas v. Secretary of Labor,* 88 F.3d 98, 107 (2d Cir.1996).

that the duty "was to be an achievable one" and that a "hazard consisting of conduct by employees" could not be totally eliminated. Accordingly, it held that Congress intended to require the elimination "only of preventable hazards." *Id.* at 1266. Although recognizing that willfully reckless employees "may on occasion circumvent the best conceived and most vigorously enforced safety regime," the court nonetheless made clear that the employer's responsibility for a hazard is not diminished because the hazard was caused by employee misconduct, because the employer has a duty to prevent and suppress hazardous conduct by employees. *Id.* In that regard, the court looked at non-preventability in very narrow terms:

"Though resistant to precise definition, the criterion of preventability draws content from the informed judgment of safety experts. Hazardous conduct is not preventable if it is so idiosyncratic and implausible in motive or means that conscientious experts, familiar with the industry, would not take it into account in prescribing a safety program. Nor is misconduct preventable if its elimination would require methods of hiring, training, monitoring, or sanctioning workers which are either so untested or so expensive that safety experts would substantially concur in thinking the methods infeasible."

*Id.*

The *National Realty* case arose from the death of a construction worker, killed while riding on the running board of a front-end loader. The company had an unwritten policy against workers riding as passengers on moving equipment, but there was evidence of other instances of that occurring. To establish a violation of the general duty clause, the court held, proof of an actual occurrence of hazardous conduct was not enough—"[t]he record must additionally indicate that demonstrably feasible measures would have materially reduced the likelihood that such misconduct would have occurred." *Id.* at 1267. Although, in light of the other occurrences of equipment riding, the court regarded it as "quite unlikely that these were unpreventable instances of hazardous conduct," it none-

theless reversed the citation and penalty because the record was "barren of evidence describing, and demonstrating the feasibility and likely utility of, the particular measures which National Realty should have taken to improve its safety policy." *Id.* The court continued that "[h]aving the burden of proof, the Secretary must be charged with these evidentiary deficiencies." *Id.*

*National Realty* thus embodied two connected, but different holdings—first, that under the general duty clause, the mere existence of a hazardous condition does not constitute a violation, it must be one that was preventable; and second, that the Secretary had the burden of showing that the condition *was* preventable. There does not seem to be any significant dispute with respect to the first holding. No court regards OSHA, or MOSHA, as imposing strict liability on an employer, at least for a violation of the general duty clause. The second holding, regarding the burden of proof, needs to be viewed in context. As noted, *National Realty* was an early case. OSHA was only a year old when the alleged infraction took place and was only three years old when the case was decided by the appellate court. At the time the case arose, the Secretary had not yet adopted specific standards, which is why the case was brought under the general duty clause. *Id.* at 1268 n. 41. The holding regarding the burden seemed to be driven, in part, by a fair notice concern—that "because employers have a general duty to do virtually everything possible to prevent and repress hazardous conduct by employees, violations exist almost everywhere" and, "[t]o assure that citations issue only upon careful deliberation, the Secretary must be constrained to specify the particular steps a cited employer should have taken to avoid citation, and to demonstrate the feasibility and likely utility of those measures." *Id.* at 1268. It was based as well on a then—existing but since-repealed OSHRC regulation, 29 C.F.R. § 2200.73(a) (1972), stating that "[i]n all proceedings commenced by the filing of a notice of contest, the burden of proof shall rest with the Secretary."

Most of the cases that have followed that approach, of requiring the Secretary to establish preventability as part of his or her case-in-chief, have also looked at preventability as an aspect of knowledge and have expressly noted and relied upon that OSHRC regulation. *See Brennan v. Occupational Safety & Health Review Com'n,* 501 F.2d 1196, 1202 (7th Cir.1974); *Brennan v. Occupational Safety & Health Rev. Com'n,* 511 F.2d 1139, 1142–43 (9th Cir.1975); *Ocean Elec. Corp. v. Secretary of Labor,* 594 F.2d 396, 401–02 (4th Cir. 1979); *Mountain States Tel. & Tel. v. Occupational Safety,* 623 F.2d 155, 157–58 (10th Cir.1980); *Capital Elec. Line Builders of Kansas v. Marshall,* 678 F.2d 128, 129 (10th Cir.1982); *Pennsylvania P. & L. v. Occupational S. & H.R. Com'n,* 737 F.2d 350, 357 (3d Cir.1984).

The split in the Federal courts may, in part, be attributable to a change in view by OSHRC. Documented by the regulation it adopted, OSHRC in the early days took the position that the Secretary had the burden on the issue of preventability, and its decisions, which were given some deference by the courts, reflected that approach. At some point, however, it changed its view and concluded that unforeseeability and unpreventability were affirmative defenses on which the employer had the burden of proof which, for a while, left courts with a perceived conflict between OSHRC's adjudicatory conduct and its regulation. *See Mountain States Tel. & Tel., supra,* 623 F.2d 155; *Ocean Elec. Corp., supra,* 594 F.2d at 401. In 1986, OSHRC, recognizing that the regulation was misleading and had not been applied literally, repealed it. *See* OSHRC, Rules of Procedure, 51 Fed.Reg. 32002 (Sept. 8, 1986).[6]

---

6. The repeal of 29 C.F.R. § 2200.73(a) was part of a more comprehensive revision of OSHRC regulations. OSHRC had not initially intended to repeal or modify the regulation, but the Secretary complained that it was misleading in that OSHRC had recognized a number of affirmative defenses on which the employer had the burden of proof, yet some employers viewed the unequivocal wording of the regulation as excusing them from any burden. The Secretary proposed that the regulation be rewritten to limit the Secretary's burden to those elements deemed to be part of the Secretary's case and to provide that the employer bore

It is clear now that most of the Federal courts of appeal that have ruled on the matter are aligned with OSHRC's current view and hold that unforeseeability and unpreventability are affirmative defenses upon which the employer has the burden of pleading and proof. They are, for the most part, the more recent cases. *See P. Gioioso & Sons, Inc. v. O.S.H.R.C.,* 115 F.3d 100, 109 (1st Cir.1997); *D.A. Collins Const. Co., Inc. v. Secretary of Labor,* 117 F.3d 691 (2d Cir.1997); *New York State Elec. & Gas v. Secretary of Labor,* 88 F.3d 98 (2d Cir.1996); *H.B. Zachry Co. v. Occupational Safety & Health,* 638 F.2d 812 (5th Cir.1981); *CMC Elec. v. Occupational Safety and Health Admin.,* 221 F.3d 861 (6th Cir.2000); *Brock v. L.E. Myers Co., High Voltage Div.,* 818 F.2d 1270 (6th Cir.), *cert. denied,* 484 U.S. 989, 108 S.Ct. 479, 98 L.Ed.2d 509 (1987); *DCS San. v. Occupational Saf. and Health Com'n,* 82 F.3d 812 (8th Cir.1996); *Danco Const. Co. v. Occupational Safety & Health,* 586 F.2d 1243, 1246–47 (8th Cir.1978); *Daniel Intern. v. Occupational Safety & Health,* 683 F.2d 361, 364 (11th Cir.1982). As pointed out in *New York State Elec. & Gas, supra,* 88 F.3d at 107, two of the contrary decisions, *Pennsylvania Power & Light Co., supra,* 737 F.2d 350, and *Mountain States Tel. & Tel., supra,* 623 F.2d 155, placed the burden on the Secretary where the alleged violative conduct was that of a *supervisor,* because of concern over the impact of a supervisor's knowledge being imputed to the employer.

The rationale for treating unpreventability as an affirmative defense was well stated by the Sixth Circuit Court of Appeals in *Brock, supra,* 818 F.2d at 1277. The court noted that the statutory duty to assure compliance with standards issued under OSHA "includes the obligation to prevent hazardous

---

the burden on affirmative defenses. OSHRC agreed that the current regulation was misleading but felt that, unless the regulation were to specify the various elements of the Secretary's case, the Secretary's proposal would give no better guidance. OSHRC construed the regulation as not one of procedure in any event but rather one of substantive law that should rest on case law. For those reasons, it decided simply to repeal the regulation. *See* OSHRC, Rules of Procedure, 51 Fed.Reg. 32002 (Sept. 8, 1986).

noncomplying conduct by employees" and that hazardous employee conduct may be considered preventable "even if no employer could have detected the conduct, or its hazardous character, at the moment of its occurrence," because, with feasible precautions in the hiring, training, and disciplining of employees, that conduct may have been prevented. *Id.*

In light of this duty, the court held that the Secretary presents a *prima facie* case of employer awareness of a potentially preventable hazard "upon the introduction of proof of the employer's failure to provide adequate safety equipment or to properly instruct its employees on necessary safety precautions." *Id.* Thereafter, it held, an employer may defend against the citation by showing that "due to the existence of a thorough and adequate safety program, which is communicated and enforced as written, the conduct of its employee(s) in violating that policy was idiosyncratic and unforeseeable." *Id.* Continuing, the court explained:

"By its nature, information with respect to the implementation of its written safety program will be in the hands of the employer, and it is not unduly burdensome to require it to come forward with such evidence. If the employer's evidence predominates, it has successfully established the defense of unforeseeable employee misconduct."

*Id.*

The courts in this camp have concluded that, to establish this affirmative defense, an employer must show that it:

"(1) established a work rule to prevent the reckless behavior and/or unsafe condition from occurring, (2) adequately communicated the rule to its employees, (3) took steps to discover incidents of noncompliance, and (4) effectively enforced the rule whenever employees transgressed it."

*P. Gioioso & Sons, Inc., supra,* 115 F.3d at 109; *D.A. Collins Const. Co., Inc., supra,* 117 F.3d at 695. That was the standard applied by the ALJ and the Deputy Commissioner in this case.

As noted, the Court of Appeals for the Fourth Circuit is in the other camp. The Fourth Circuit court first addressed the

issue in *Ocean Elec. Corp., supra,* 594 F.2d at 401–02, and, in that decision, relied, at least in part, on the then-existing OSHRC regulation that arguably put the burden of proof on the Secretary. When *Ocean Electric* was decided in 1979, there was already an incipient split among the Federal courts but not yet a decided majority the other way. In its later cases, *Forging Industry Ass'n v. Secretary of Labor,* 773 F.2d 1436 (4th Cir.1985), *L.R. Willson & Sons v. OSHRC,* 134 F.3d 1235 (4th Cir.1998), and *N & N Contractors v. Occupational Safety & Health,* 255 F.3d 122 (4th Cir.2001), the court simply applied *stare decisis* and decided not to depart from its holding in *Ocean Electric,* without considering, at least in its opinions, the reasoning used by the majority of its sister courts or that OSHRC itself had changed its view and had repealed the regulation upon which *Ocean Electric* had in part relied. It is of interest that, in *Magco of Maryland, Inc. v. Barr,* 33 Va.App. 78, 531 S.E.2d 614 (2000), *aff'd,* 262 Va. 1, 545 S.E.2d 548 (2001), the Virginia court, faced with this issue and the Fourth Circuit jurisprudence, declined to follow the Fourth Circuit approach, noting that it was a minority view, and chose instead to treat unpreventability as an affirmative defense. The court relied on the fact that the Virginia OSHA counterpart had adopted, in the form of regulations, the standard that the Federal courts in the majority camp had imposed by case law.

At least two other States, in interpreting their versions of MOSHA, also regard the isolated or unpreventable hazard defense as an affirmative one upon which the employer has the burden, in general conformance with the majority Federal view. *See Davey Tree Surgery Co. v. Occupational Safety and Health Appeals Bd.,* 167 Cal.App.3d 1232, 213 Cal.Rptr. 806 (Cal.App.1985); *IBP, Inc. v. Iowa Employment Appeal Bd.,* 604 N.W.2d 307 (Iowa 1999). We have found no State cases (and none have been cited to us) to the contrary.

As noted, we believe the majority view is the more reasonable one. We are not dealing here with the general duty, so the fair notice concerns expressed in *National Realty* are not present. Cole was charged with violating a specific standard

dealing with fall protection, which is explicit in its requirements. The evidence supporting that violation was not merely substantial but essentially conceded. Up to fifteen employees and one supervisor actively participated in the violation, and one additional company official was in a position to have observed it. There was ample evidence in the Commissioner's case, therefore, to show knowledge of the violation on Cole's part. Under any view, the defense that this was an isolated, unforeseeable, unpreventable, idiosyncratic event would depend on the extent to which Cole's safety plan was adequate on its face and was adequately communicated to the employees and enforced. The evidence presented by the Commissioner, at least *prima facie*, sufficed to show that, (1) the plan was *not* adequate on its face, as it did not make clear that safety monitors could have no other significant duties, (2) the requirements of the standard were *not* sufficiently communicated to the employees, in that none of them seemed to know or be concerned that there was a serious violation, and (3) by not disciplining any of the employees other than Baldwin and giving him less discipline that the safety plan itself called for, Cole did not effectively enforce the plan it had. If, despite this *prima facie* evidence, Cole believed that the incident was nonetheless unforeseeable and unpreventable, it should have, and did have, the burden of establishing that fact, and it clearly failed to do so.

 We need not decide here whether, when dealing with a general duty violation, either due process or legislative intent concerns might require a different result. We hold only that, when the violation is based on a specific standard and the Commissioner establishes the violation and the employer's actual or constructive awareness of it, the defense that the conduct constituting the violation was unforeseeable or unpreventable is an affirmative one which the employer must plead and prove. To do so, it must establish the four elements set forth in *P. Gioioso & Sons, supra,* that have been generally adopted by the Federal courts and were applied by the ALJ and Deputy Commissioner in this case.

### *Repeated Violation*

■ Whether a violation is a repeated one has relevance in terms of the penalty that may be assessed. LE § 5–810(a)(1) permits a penalty of up to $7,000 for each violation, but § 5–810(a)(2) permits a penalty of up to $70,000 per violation if the violation is willful *or* repeated. The statute does not define the term "repeated." As the penalty actually assessed against Cole for the fall protection violation was only $3,000, and thus within the limit allowed under § 5–810(a)(1), it is not entirely clear how Cole has been prejudiced by the finding that the violation was a repeated one. Nonetheless, because the issue was raised in the petition for *certiorari* and on the assumption that the finding may have some unidentified collateral prejudice, we shall address it.

We dealt with this issue in *Com'r of Labor v. Bethlehem Steel, supra,* 344 Md. 17, 684 A.2d 845, where, quoting in part from *D & S Grading Co., Inc. v. Secretary of Labor,* 899 F.2d 1145, 1147 (11th Cir.1990), we adopted what we regarded as the uniform view that a violation is "repeated" if the *same* standard has been violated more than once, there is a substantial similarity of violative elements between the current and prior violations, and the prior citation on which the repeated violation is based has become the final order of the Commissioner. In the *Bethlehem Steel* case, the current and prior citations were, in fact, of the same standard; the issue was whether there was a substantial similarity of the violative elements and who had the burden on that issue. The question here is whether the same standard was violated.

As noted, 29 C.F.R. § 1926.501—the regulation dealing with fall protection—addresses a wide variety of circumstances, fifteen in number, each of which is dealt with in a separate paragraph. The requirements vary from one to another. As we have said, for employees working on a low-slope roof, § 1926.501(10) permits, in addition to guardrails, safety nets, and personal fall arrest systems, a combination of warning line system and safety monitoring system. The earlier violation, used to establish the repeated nature of the instant one, was

of § 1926.501(11), imposing requirements for steep roofs. Because of the increased danger from working on steep roofs, warning line and safety monitoring systems do not suffice under that standard. The standard instead requires guardrail systems with toeboards, safety net systems, or personal fall arrest systems. That is clearly *not* the same standard, and, as a result, the instant violation cannot be regarded as a repeated one within the meaning of LE § 5–810.

JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND TO REMAND THE CASE TO THAT COURT WITH INSTRUCTIONS (1) TO REMAND TO THE COMMISSIONER WITH INSTRUCTIONS TO VACATE THE FINDING THAT THE FALL PROTECTION VIOLATION WAS A REPEATED ONE, AND (2) OTHERWISE TO AFFIRM THE ORDER OF THE COMMISSIONER; COSTS IN THIS COURT AND COURT OF SPECIAL APPEALS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.