EATHERLY CONSTRUCTION
COMPANY

v.

TENNESSEE DEPARTMENT OF
LABOR AND WORKFORCE
DEVELOPMENT, et al.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

May 25, 2006 Session.

Nov. 29, 2006.

Angus Gillis, III, Nashville, Tennessee, for the appellant, Eatherly Construction Company.

Robert E. Cooper, Jr., Attorney General and Reporter; and Warren A. Jasper, Assistant Attorney General, for the appellee, Tennessee Department of Labor and Workforce Development, the Commissioner of the Tennessee Department of Labor and Workforce Development and the Tennessee Occupational Safety and Health Review Commission.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

A construction company appeals the finding it violated an Occupational Safety and Health Administration regulation that prohibits employees from entering a large excavated trench that does not contain adequate protection to prevent the earthen walls from collapsing on employees. The company contends it did not violate the regulation because its foreman was the only one who entered the unprotected trench and a foreman is not an "employee" as that term is defined by the controlling regulations. In the alternative, assuming a violation occurred, the company contends it is not liable because the foreman's actions constituted employee misconduct. The State of Tennessee Occupational Safety and Health Review Commission found the company in violation of the regulation and liable for the conduct of its foreman. The Davidson County Chancery Court affirmed the decision of the Commission upon a Petition for Review filed by the company. We affirm.

During 2002 and early 2003, Eatherly Construction Company ("Eatherly") began installing a storm drainage pipe adjacent to Elm Hill Pike in Nashville pursuant to a construction contract with the State of Tennessee to widen a portion of Elm Hill Pike and install storm sewers. In order to connect the storm drainage pipe to the storm sewer system, allowing storm water to flow through the sewer system in lieu of a ditch, Eatherly found it necessary to excavate a large trench, measuring eighteen feet in depth, twenty-two feet in length and nine feet in width.

Certain construction trenches, depending on the size, depth and sloping of the walls of the trench, must be protected against cave-ins before an employee is permitted to enter the trench. The pertinent regulation is 29 C.F.R. § 1926.652 (2006).[1]

---

1. 29 C.F.R. § 1926.652 (2006) explains the requirements for protective systems intended to prevent cave-ins and harm to employees. Essentially, for a worker to lawfully enter the

One end of the trench excavated by Eatherly was sufficiently shallow and properly sloped so that additional protective measures were not required before employees were permitted in the trench; however, Eatherly excavated the other end of the trench in a manner and to a depth that required the installation of protective measures, pursuant to 29 C.F.R. § 1926.652 (2006), before an employee could work in that portion of the trench.

Because of the unique position of the trench in relation to the roadway, Elm Hill Pike, Eatherly found it was impractical to employ the relatively common protective measure of sloping the trench wall on a two to one, horizontal to vertical ratio, installing a trench box or shoring the trench, and intended to complete the potentially dangerous end of the trench without an employee entering that area.[2] Steve Eatherly, a partner of Eatherly Construction Company, specifically instructed his on-site foreman, Denzil Evans, that he did not want anyone in the end of the trench that was not adequately protected.[3] This conversation occurred on the morning of January 31, 2003. Later that day, however, Evans entered the prohibited section of the trench to mark with paint the location of a manhole that Eatherly was to dig. As Evans explained, he found it necessary to go in that section of the trench in order to mark the spot for the man hole, and he was there for only a few minutes.

Later in the day, Shannon Crawford, a safety compliance officer with the Tennessee Department of Labor and Workplace Development, Division of Occupational Safety and Health, went to the construction site for a routine inspection. While there, Crawford noticed the deep section of the trench. Upon further inspection, Crawford determined the deep end of the trench was not in compliance with 29 C.F.R.1926.652(b) or (c) (2006). As Crawford explained, the trench was one of "the deepest excavation[s] I've ever inspected and the vertical walls were some of the worst I've seen." He additionally noted the trench lacked cave-in protection at the deep end closest to Elm Hill Pike.

The lack of cave-in protection did not constitute a violation of the regulation; however, without the protection, no employee could enter that section of the trench. During his inspection, Crawford observed painted reference marks and a can of spray paint in the deep, unprotected section of the trench. He discussed the matter with Evans and after speaking with Evans and other Eatherly employees, Crawford learned that Evans had been in the trench that morning. As a consequence, Crawford conducted a closing conference with Steve Eatherly and Evans before he left the job site in order to inform them of the violation he observed

unprotected trench area, the trench must have either been: (1) properly shorn, (2) properly sloped or (3) protected by a trench box.

2. Shannon Crawford, a safety compliance officer, noted during the hearing that using a trench box would not be feasible. He then said, seemingly with hesitation, "You'd have to stack [the trench boxes] which can run into problems. But it could be feasible, I guess." He noted that it would not be possible to slope the wall that was closest to Elm Hill

Pike. In his opinion, "some sort of shoring" was needed. Steve Eatherly noted in the hearing that sloping was not feasible. Also, when asked if shoring could be used, he answered, "I don't know how it could have been."

3. According to Steve Eatherly, he and Evans had an alternative plan on how they were going to conduct the work that needed be done in the trench without physically entering the trench.

and that he would be recommending that a citation for the violation be issued.

Based upon Crawford's findings and recommendation, the Division of Occupational Safety and Health within the Department of Labor and Workforce Development issued a $4,000 Citation and Notification of Penalty to Eatherly for the violation of 29 C.F.R. § 1926.652(a) (2006) as the result of an Eatherly employee entering a trench that was not adequately protected from cave-ins in accordance with 29 C.F.R. § 1926.652(b) or (c) (2006).[4] The penalty was to be abated (paid) by March 15, 2003. Following receipt of the citation, in a letter dated March 15, 2005, Eatherly gave notice to the Department that it was contesting the citation and the penalties issued to it.

As a consequence of Eatherly's contest of the citation, the Commissioner of Labor and Workforce Development ("Commissioner"), who has the power and responsibility to administer and enforce the provisions of the Tennessee Occupational Safety and Health Act ("Act") and the regulations promulgated pursuant to the Act, brought an action before the Occupational Safety and Health Review Commission to affirm the issuance of the citation, abatement date and the penalty. Eatherly answered the Commissioner's Complaint, asserting *inter alia* (1) its foreman, Evans, was not an "employee" within the "definition of an employee" in 29 C.F.R. § 1926.32 (2006) and thus no violation occurred; and (2) in the event its foreman was found to be an employee, his actions constituted employee misconduct for which Eatherly would not be liable.[5] The Commission heard the matter in August of 2003, after which it

issued an Order of Affirmation, whereby it affirmed the citation and fine.

Thereafter, Eatherly filed a Petition for Review in the Davidson County Chancery Court pursuant to Tenn.Code Ann. § 4–5–322, in which it alleged the Commission's decision was (1) in violation of statutory provisions; (2) arbitrary and capricious; (3) characterized by an abuse of discretion or by a clearly unwarranted exercise of discretion; , and (4) unsupported by evidence which is both substantial and material in the light of the entire record. The Chancery Court subsequently entered a Memorandum and Order sustaining the Commission's decision to affirm the citation from which Eatherly appeals.

On appeal, Eatherly contends (1) Evans was not an "employee" of Eatherly within the applicable statute; (2) the regulations adopted by the Commissioner, specifically Tenn. Comp. R. & Regs. §§ 0800–1–1–.01 *et seq.* and 0800–1–6–.02(2) and .03 are unconstitutionally vague; (3) the foreman's actions constituted employee misconduct and, thus, Eatherly is not liable for his actions; and (4) the Chancellor erred in holding that Eatherly had the burden of proof with respect to the applicability of the employee misconduct defense.

### APPELLATE REVIEW PURSUANT TO THE ADMINISTRATIVE PROCEDURES ACT

Judicial review of decisions of administrative agencies, when those agencies are acting within their area of specialized knowledge, experience, and expertise, is governed by the narrow standard contained in Tenn.Code Ann. § 4–5–322(h) rather than the broad standard of review used in other civil appeals. *Willamette Indus., Inc. v. Tennessee Assessment Ap-*

---

**4.** The January 31, 2003 violation constituted a "repeat" violation by Eatherly; the others occurring in 1999 and 2000 for similar unlawful actions.

**5.** Eatherly also asserted that there was no basis for finding a repeat violation.

*peals Comm'n,* 11 S.W.3d 142, 146 (Tenn. Ct.App.1999); *Wayne County v. Tennessee Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 279–280 (Tenn.Ct.App.1988); *CF Indus. v. Tennessee Pub. Serv. Comm'n,* 599 S.W.2d 536, 540 (Tenn.1980); *Metropolitan Gov't of Nashville v. Shacklett,* 554 S.W.2d 601, 604 (Tenn.1977).

The trial court may reverse or modify the decision of the agency if the petitioner's rights have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn.Code Ann. § 4–5–322(h)(1)–(5). However, the trial court may not substitute its judgment concerning the weight of the evidence for that of the Board. *Jones v. Bureau of TennCare,* 94 S.W.3d 495, 501 (Tenn.Ct.App.2002) (citing *Gluck v. Civil Serv. Comm'n,* 15 S.W.3d 486, 490 (Tenn. Ct.App.1999)). The same limitations apply to the appellate court. *See Humana of Tennessee v. Tennessee Health Facilities Comm'n,* 551 S.W.2d 664, 668 (Tenn.1977) (holding the trial court, and this court, must review these matters pursuant to the narrower statutory criteria).

## DID THE FOREMAN'S ACTIONS CONSTITUTE A VIOLATION?

■ An employee may not enter an excavation trench that is not adequately protected from cave-ins. *See* 29 C.F.R. § 1926.652(a) (2006). It is undisputed that the deep end of the trench excavated by Eatherly was not properly shorn, properly sloped or protected by a trench box as required by 29 C.F.R. § 1926.652(b) or (c) (2006). Eatherly, however, contends its foreman, who entered the deep end of the trench, was not an "employee" as that term is defined by the applicable regulations adopted by the Department of Labor and Workforce Development and thus there was no violation.

Eatherly admits that its foreman, Denzil Evans, was an employee in the general context of being a salaried employee; however, it vigorously contends he was not an employee as that term is defined in the pertinent industry regulations. *See* 29 C.F.R. § 1926.32(j) (2006). Instead, Eatherly contends the definition of "employee" in 29 C.F.R. § 1926.32(j) (2006) controls because it pertains specifically to the construction industry and was adopted by the Commissioner. *See* Tenn. Comp. R. & Regs. § 0800–1–6–.02(2), Occupational Safety and Health Standards for Construction.[6]

The Department contends, however, that the statutory definition of "employee" in Tenn.Code Ann. § 50–3–103 controls. That definition reads: " 'Employee' means any person performing services for another under a contract of hire, including minors, whether lawfully or unlawfully employed, persons in executive positions, and shall include county, metropolitan and municipal government employees; ..." Tenn.

---

**6.** Tenn. Comp. R. & Regs. § 0800–1–6–.02(2) states: "The Commissioner of Labor and Workforce Development adopts the federal occupational safety and health standards codified in Title 29, Code of Federal Regulations, Part 1926, as of July 1, 2006 except as provided in Rule 0800–1–6–.03 of this chapter."

Code Ann. § 50–3–103(7). The Department also contends that if there is a conflict between the two definitions, the statutory definition prevails.

The narrower regulatory definition upon which Eatherly relies states:

"Employee" means every laborer or mechanic under the Act regardless of the contractual relationship which may be alleged to exist between the laborer and mechanic and the contractor or subcontractor who engaged him. "Laborer and mechanic" are not defined in the Act, but the identical terms are used in the Davis–Bacon Act (40 U.S.C. 276a), which provides for minimum wage protection on Federal and federally assisted construction contracts. The use of the same term in a statute which often applies concurrently with section 107 of the Act has considerable precedential value in ascertaining the meaning of "laborer and mechanic" as used in the Act. "Laborer" generally means one who performs manual labor or who labors at an occupation requiring physical strength; "mechanic" generally means a worker skilled with tools. See 18 Comp. Gen. 341.

29 C.F.R. § 1926.32(j) (2006), adopted by Tenn. Comp. R. & Regs. § 0800–1–6–.02(2).

▪ Eatherly hangs its construction hat on the fact that when determining whether a general or specific definition of a regulation shall apply, the Commissioner has held:

If a particular standard is specifically applicable to a condition, practice, means, method, operation or process, it shall prevail over any different general standard which might otherwise be applicable to the same condition, practice, means, method, operation or process.

Tenn. Comp. R. & Regs. § 0800–1–1–.05(3)(a).[7]

As the salaried foreman of Eatherly's construction crew, Evans' primary duties were to supervise Eatherly's crew, to provide instruction and to assure the work was done properly. In addition to his supervisory duties, seeing that everyone did their job, Evans occasionally operated equipment and engaged in physical labor just as the crew he supervised.

Although Evans had supervisory duties that distinguished his role as a foreman from the laborers he supervised on behalf of Eatherly, Evans also engaged in the same physical labor as those he supervised, thereby putting him in the same classification as Eatherly's other employees, only with additional supervisory responsibilities. As a consequence, we find that Eatherly's foreman falls within both definitions of "employee." Therefore, we need not engage in the exercise of determining whether one definition prevails over the other since the foreman falls within both definitions of "employee."

We therefore find that Eatherly's foreman was an "employee" for purposes of the matters in dispute.

## UNCONSTITUTIONALLY VAGUE REGULATIONS

Eatherly contends that §§ 0800–1–1–.06(2) and 0800–1–6–.02 of the Rules of Tennessee Department of Labor and Workforce Development, Division of Occupational Safety and Health are unconstitutionally vague. We have concluded that Eatherly's foreman falls within the statutory and regulatory definitions of "employee." Since Eatherly's foreman meets the

**7.** It, however, must be noted that "[a]dministrative regulations cannot be inconsistent with statutes on the same subject." *Kaylor v.*

*Bradley,* 912 S.W.2d 728, 734 (Tenn.Ct.App. 1995).

definition of an employee under Tenn.Code Ann. § 50–3–103, the issue of whether Tenn. Comp. R. & Regs. §§ 0800–1–1–.06(2) and 0800–1–6–.02 are unconstitutionally vague is moot.

## EMPLOYEE MISCONDUCT

Eatherly contends the foreman disobeyed company safety policies by entering the unshorn end of the trench, which constituted employee misconduct for which Eatherly is not liable. Eatherly also contends the Commissioner and the Chancellor erred by placing the burden of proving employee misconduct on Eatherly instead of the Department.

### Burden of Proof

■ Tennessee courts have not specifically dealt with the issue of whether the employer has the burden of proof as it pertains to the defense of employee conduct. Looking to federal decisions, we find the majority of circuits have held employee misconduct is an affirmative defense for which the employer has the burden of proof. The Sixth Circuit Court of Appeals, in *Brock v. L.E. Myers Co.*, stated, "[w]e are persuaded that the appropriate resolution of this question is to regard a claim of unforseeable employee misconduct as an affirmative defense to be proved by the employer after the Secretary has made out a *prima facie* case of a violation of the Act." *Brock v. L.E. Myers Co.*, 818 F.2d 1270 (6th Cir.1987) cert. denied 484 U.S. 989, 108 S.Ct. 479, 98 L.Ed.2d 509 (1987). Other circuit courts have found it to be an affirmative defense as well, for which the contractor has the burden of proof. *See New York State Electric & Gas Corp. v. Sec'y of Labor*, 88 F.3d 98 (2nd

Cir.1996); *Daniel Int'l Corp. v. OSHRC*, 683 F.2d 361 (11th Cir.1982); *H.B. Zachry Co. v. OSHRC*, 638 F.2d 812 (5th Cir.1981); *General Dynamics Corp. v. OSHRC*, 599 F.2d 453 (1st Cir.1979); and *Danco Constr. Co. v. OSHRC*, 586 F.2d 1243 (8th Cir.1978).

A number of states have reached the same conclusion that employee misconduct is an affirmative defense. *See Centimark Corp. v. Dep't of Labor and Indus. of Washington*, No. 54936–7–I, 2005 WL 1950402, at *6 (Wash.App. Div. 1 Aug.15, 2005); *Maryland Com'r of Labor and Industry v. Cole Roofing Co., Inc.*, 368 Md. 459, 796 A.2d 63, 69 (2002); *Magco of Maryland, Inc. v. Barr*, 33 Va.App. 78, 531 S.E.2d 614, 618 (2000).

We therefore hold that employee misconduct is an affirmative defense. In Tennessee, the burden of proof concerning affirmative defenses rests on the party who raises the defense. *See Ass'n of Owners of Regency Park Condominiums v. Thomasson*, 878 S.W.2d 560 (Tenn.Ct.App. 1994). Therefore, Eatherly, having raised employee misconduct as a defense, has the burden to prove that Evans' actions constituted employee misconduct.[8]

### Elements of Employee Misconduct

■ To successfully establish the defense of employee misconduct, the employer must prove: (1) the employer had established work rules designed to prevent the violation, (2) the employer had adequately communicated the rules to its employees, (3) the employer had taken steps to discover violations, and (4) the employer had effectively enforced the rules when

---

8. Eatherly relies on Rule 1030–5–14(1) which states, "In all proceedings commenced by the filing of a notice of contest, the burden of proof shall rest with the Commissioner." While the Tenth Circuit Court of Appeals, a minority circuit regarding this issue, based its holding, placing the burden of proof on the enforcing authority, on a similar rule with similar language, we choose not to follow the minority line of cases.

violations were detected. *Mayflower Vehicle Sys., Inc. v. Chao,* 68 Fed.Appx. 688, 690, 2003 WL 21540983 (6th Cir.2003). Therefore, Eatherly must prove all four of the elements in order to win on the claim of employee misconduct.

Having examined the record, we find that Eatherly has provided scant evidence to support the affirmative defense of employee misconduct. Specifically, there is little to establish that Eatherly has taken appropriate measures to discover violations or that it took steps to enforce its rules when violations were detected. Moreover, and significantly, the employee who violated the rule is the same employee who was charged with the responsibility to assure safety compliance. Even more exacerbating is the fact that Evans, in addition to being the foreman, was the "competent" person on the job site. Pursuant to the industry regulations, the "competent" person is the designated employee who is was specifically instructed about the requirements for the use of protective measures in trench excavation.[9] Thus, the foreman, Evans, not only knew that it was a violation for an employee to enter the excavation area, he was charged with the responsibility to enforce the applicable safety measures.

The affirmative defense of employee misconduct becomes particularly difficult when the employee who engaged in the misconduct is the foreman or supervisor who was assigned the duty to enforce compliance with safety measures. Other courts have noted that the affirmative defense of employee misconduct is more difficult to establish when a supervisor or foreman is involved in the misconduct. *Sec'y of Labor v. The Fishel Co.,* 1998 WL 558885, at *5, 18 O.S.H. Cas. (BNA) 1530, 1998 O.S.H.D. (CHH) ¶ 31644 (O.S.H.R.C.A.L.J. Aug. 28, 1998). This is

because it is the supervisor's duty to protect the safety of the employees under his supervision. *Id.* The fact that "a supervisor would feel free to breach a company safety policy is strong evidence that the implementation of the policy is lax." *Id.* (citations omitted).

We therefore find that Eatherly failed to carry its burden of proof with regard to the affirmative defense of employee misconduct.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against appellant, Eatherly Construction Company.

---

9. *See* 29 C.F.R. §§ 1926.651(k) (2006), 1926.650(b) (2006), 1926.32(f) (2006).