# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 18, 2015 Session

## TRI-CITIES HOLDINGS, LLC v. TENNESSEE HEALTH SERVICES AND DEVELOPMENT AGENCY

### Appeal from the Chancery Court for Davidson County
### No. 1465011     Carol L. McCoy, Chancellor

_____

### No. M2015-00058-COA-R3-CV – Filed February 22, 2016
_____

An attorney from Georgia, who had been admitted to practice *pro hac vice* in a contested case hearing before the Tennessee Health Services and Development Agency, had his privilege to practice revoked by the Administrative Judge based upon representations he made as to the status of related federal litigation. On review by the Chancery Court, the revocation was affirmed. Discerning no error, we affirm the judgment of the Chancellor.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J. joined.

Jim Higgins, Nashville, Tennessee, for the appellant, Tri-Cities Holdings, LLC.

Herbert H. Slatery, III, Attorney General and Reporter; and Sara E. Sedgewick, Senior Counsel, Nashville, Tennessee, for the appellee, Tennessee Health Services and Development Agency.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

This appeal arises out of the revocation of an attorney's permission to appear *pro hac vice* by an Administrative Judge for conduct in the course of a contested case proceeding. The parties are the Tennessee Health Services and Development Agency

("HSDA") and Tri-Cities Holdings, LLC ("Tri-Cities"), an entity that wished to open an opiate addiction treatment center in Johnson City and applied for a certificate of need ("CON") from the HSDA pursuant to Tenn. Code Ann. § 68-11-1607. After the application was denied in June 2013, Tri-Cities initiated a contested case pursuant to Tenn. Code Ann. § 68-11-1610. As provided in Tenn. Code Ann. § 4-5-301, the contested case procedures allowed for the appointment of an Administrative Judge ("AJ") to oversee the process at the request of the agency; pursuant to the statute an AJ was appointed.

On July 8, 2013, Tri-Cities' counsel, Mr. James Dunlap, who is licensed in the State of Georgia, filed suit in the U.S. District Court for the Eastern District of Tennessee on behalf of Tri-Cities and eight potential patients of the proposed opiate treatment program ("OTP"). The suit named HSDA, the City of Johnson City, the Johnson City Board of Commissioners, and the Johnson City Board of Zoning Appeals as defendants and alleged that the city's zoning restrictions and HSDA's "statutory procedures" violated the Rehabilitation Act, 29 U.S.C. § 701 *et seq,* and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*[1]

On July 25, Mr. Dunlap sent a letter to the Administrative Procedures Division of the Secretary of State, containing the following request:

---

[1] The suit filed July 8, 2013, will be referred to in this opinion as *Tri-Cities II.* Mr. Dunlap had previously filed a nearly identical lawsuit, hereinafter referred to as *Tri-Cities I*, on behalf of the same plaintiffs against the same defendants, with the exception of the HSDA. *Tri-Cities I* was filed after the City of Johnson City had denied Tri-Cities' application for rezoning to permit it to open the proposed opiate addiction treatment center, also known as a methadone clinic.

In *Tri-Cities I*, the federal court issued an order requiring Tri-Cities to show cause as to why its "motion [for a preliminary injunction] was not premature inasmuch as the plaintiff, Tri-Cities Holdings, LLC, has no Certificate of Need from the Tennessee Health Services and Development Agency or license from the Tennessee Department of Health." *Tri-Cities Holdings LLC v. City of Johnson City, Tenn.*, No. 2:13-CV-108, 2013 WL 2635337, at *3 (E.D. Tenn. June 12, 2013). The federal court highlighted the unresolved nature of the still-pending CON application, noted that "the State of Tennessee requirements, as to CON and licensing, which have not been met and may never be met for reasons totally unrelated to Johnson City's zoning ordinance," and dismissed the case without prejudice on the ground that it was not ripe; the court held:

> Although the factual record is sufficient to allow the Court to decide plaintiffs' facial challenges to the zoning ordinance, because it is largely a legal issue, it is virtually impossible at this time for the Court to determine any likelihood that the harm alleged by plaintiffs will ever come to pass, and there is minimal hardship on the parties if judicial review is denied as premature until it is determined whether Tri-Cities Holdings can meet the State of Tennessee's CON and licensing requirements.

*Id.* at *5.

On behalf of my clients, I would ask your office directly to provide my clients with a reasonable modification of any and all applicable state and local rules and regulations as required under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("Rehabilitation Act") from your office, and to the administrative hearing officer assigned to this case, and any other applicable agency of the State of Tennessee, to allow TCH to locate its Opiate Treatment Program at 4 Wesley Court, or elsewhere, in Johnson City, Tennessee.

On July 28, Mr. Dunlap sent a substantially similar letter to the AJ who had been assigned to the case and asked that the administrative appeal "be stayed while the federal case [*Tri-Cities II*] is pending." HSDA's counsel responded by letter, dated July 29, stating that the HSDA did not consent to the stay. Mr. Dunlap responded by letter to the AJ that same day, again asking for a stay and for "a reasonable modification under the ADA and the Rehabilitation Act to allow TCH to locate its OTP clinic in Johnson City"; with this letter, Mr. Dunlap included the four-page table of contents of the 75-page *Tri-Cities II* complaint.[2] On July 30, Mr. Dunlap filed a Motion for Admission *Pro Hac Vice*, which the AJ granted on August 2.

The AJ held pre-hearing conferences in July, September, and November of 2013; on November 18, the AJ entered a scheduling order stating that "the status of the related federal litigation has not changed; therefore, the hearing in this matter will continue to be held in abeyance." On January 8, 2014, the AJ emailed counsel for both parties seeking an update on developments in the pending federal litigation. In reply, Mr. Dunlap represented that no new developments had occurred. HSDA's counsel also replied, disputing Mr. Dunlap's representation and indicating that he would file a document explaining the developments. On March 7, HSDA's counsel filed a Motion to Set for Hearing, which included as an exhibit the federal magistrate's December 10, 2013, order granting defendants' motion to stay discovery in *Tri-Cities II* in which the magistrate expressed concern about the stay in the administrative appeal.[3]

---

[2] As explained further *infra*, in the July 28 letter, which was sent by electronic and regular mail, Mr. Dunlap referenced the federal complaint and stated that "[t]he administrative appeal claims are included as pendant claims in Counts 13 and 14 in the federal complaint." The record does not show that the complaint was included as an attachment to the electronic mail or an enclosure in the letter sent by regular mail. In the letter sent July 29, also by electronic and regular mail, Mr. Dunlap included the first four pages of the 75-page complaint; the four pages consisted of an introductory paragraph to the complaint and a three-page table of contents.

[3] In pertinent part, the Magistrate held:

> Plaintiffs' blatant forum-shopping to avoid this court's ruling in Tri-Cities I admittedly has been taken into account in the court's decision. But more important is the fact that it is reasonable to conclude that the district judge will not change his opinion that plaintiffs

In response to HSDA's motion, on March 13, on behalf of Tri-Cities, Mr. Dunlap filed a pleading styled "Objection to Motion to Set Hearing and Demand for Reasonable Modification under the ADA." In this Objection, Mr. Dunlap asserted, *inter alia*, the following:

> . . .[I]f this tribunal does "take HSDA's bait" and takes any action to decide this appeal before a federal court or DOJ has spoken on this case, including scheduling a hearing, Petitioner respectfully indicates that it will have no choice but to join Your Honor, in an official capacity, and this tribunal, as defendants in the pending federal court action.
>
> Finally, Petitioner respectfully submits that, under the ADA, Your Honor and this tribunal are required to offer Petitioner a reasonable modification to allow the CON to be issued. Petition[er] respectfully submits that Your Honor's and this tribunal's continuing failure to do this creates a cause of action that Petitioner may bring against Your Honor, and the tribunal itself, and may well move DOJ to include Your Honor and this tribunal as respondents in an ADA enforcement action.
>
> Thus, this tribunal should decline to be HSDA's and Johnson City's "fixer," despite their desperate attempts to create a non-existent "escape hatch" for their blatant violations of federal law and the penalties likely soon to be imposed against them for these violations.
>
> ***
>
> Misery loves company and HSDA would surely love this tribunal to try to extricate HSDA from the legal swamp it has created for itself. However, this tribunal is unable to do this and, at a minimum, would just succeed in bringing further liability upon itself and become a named defendant in the

---

must attempt to procure a certificate of need, and a license from the Tennessee Health Services Agency, before this Court can entertain their suit.

Plaintiffs' application for a certificate of need has been denied, and an appeal of that denial is now pending before a state administrative law judge. During argument, the court was quite surprised to learn that an administrative law judge has delayed considering the appeal of that denial based upon plaintiffs' counsel's representation to her that he intended to ask this court to stay, i.e., enjoin, any action by her. That would seem to be contrary to plaintiffs' professed need for a quick resolution to this litigation.

Order Granting Defendant's Mot. to Stay Discovery, *Tri-Cities Holdings v. Tennessee Health Services and Development, et al*, Case No. 2:13-CV-305, Dec. 10, 2013.

4

federal action.  Petitioner <u>respectfully</u> suggests this would be an unwise and costly step for the tribunal and certainly violate principles of judicial economy at the very minimum.

(Emphasis in original.) Mr. Dunlap also claimed in the Objection to Motion to Set that "this administrative appeal process amounts to a scheme or artifice to violate the ADA."

The next day, the AJ issued an order revoking Mr. Dunlap's permission to appear *pro hac vice*.  In that order, the AJ made numerous findings of fact and quoted Tenn. Sup. Ct. R. 19 in its entirety, as well as excerpts of Tenn. Sup. Ct. R. 8, RPC 3.3 ("Candor Toward the Tribunal"), 3.5 ("Impartiality and Decorum of the Tribunal"), and 8.4 ("Misconduct") and Tenn. Code Ann. § 39-14-112, "Extortion."  The AJ then stated the following Conclusions of Law:

> 1. From the outset, Mr. Dunlap requested a stay of this administrative proceeding on behalf of Tri-Cities until after the related federal court action was resolved.  He never disclosed to this tribunal that the federal litigation had previously been dismissed for lack of ripeness or that it was now, itself, subject to a stay in deference to the administrative proceedings.

> 2. Notwithstanding the recent indication from the federal court that the CON appeal should be resolved before the federal issues are addressed, Mr. Dunlap still insists that the stay of these proceedings should remain in place, and has threatened to join the Administrative Judge and this tribunal in the federal court action should the stay of the administrative proceedings be lifted and the CON appeal be set for hearing.

> 3. In addition, Mr. Dunlap is now demanding that this tribunal grant the requested modifications of HSDA rules and the disputed CON even though the HSDA's obligation to provide this relief is yet to be determined, either by this tribunal or in the federal courts.  Mr. Dunlap's demand includes an unveiled threat that the Administrative Judge and the tribunal will face an ADA enforcement action by the Department of Justice should the Administrative Judge fail to provide the requested relief.

> 4. Mr. Dunlap has misrepresented to this tribunal the status of the federal litigation and has used this misrepresentation to attempt to coerce a decision by this tribunal in favor of his client without the benefit of the administrative hearing, which he demands must remain stayed.

5

5. Mr. Dunlap's coercion and misrepresentations are a flagrant attempt to improperly influence a judge in violation of Rules 3.3, 3.5, and 8.4 of the Tennessee Rules of Professional Conduct, as well as Tenn. Code Ann. § 39-14-112.

6. Mr. Dunlap has expressed contempt for this tribunal and these administrative proceedings, thus, there is no apparent purpose for his continued participation.

7. Mr. Dunlap's actions have unnecessarily impeded a resolution of the CON appeal and have breached the conditions on which he was granted *pro hac vice* admission to practice law in Tennessee. In accordance with Rule 19(c), Mr. Dunlap's permission to appear in this matter *pro hac vice* is appropriately and necessarily revoked.

On March 24, Tri-Cities, through its local counsel, filed a motion to reconsider the revocation of Mr. Dunlap's permission to appear *pro hac vice*, denying "each and every allegation of misconduct, violation of Rules of Professional Conduct, or violation of law, by Mr. Dunlap contained in the Court's March 14, 2014 Order"; asking the AJ to "rescind and otherwise withdraw" its Order; and asserted "that Mr. Dunlap is a competent and careful attorney, appropriately cognizant of his duties both to his clients and this Court, and that Mr. Dunlap should be allowed to represent TCH in this administrative proceeding."

The AJ entered an order on April 2, in which she noted that "a few points of clarification are needed." The AJ stated that the permission granted Mr. Dunlap had been "revoked on account of Petitioner's Objection to Motion to Set Hearing and Demand for Reasonable Modification Under the Americans with Disabilities Act . . . in which Mr. Dunlap makes an unveiled threat to initiate litigation against this tribunal should it decline to make a ruling in his favor."[4] The AJ also noted that Mr. Dunlap had not provided "rather pertinent information regarding the status of the federal proceedings . . . when requesting that the stay remain in place." Finally, the AJ ruled as follows:

The Motion [for Reconsideration] provides no authority to support the contention that a tribunal, such as the APD [Administrative Procedures

---

[4] Tri-Cities initiated a third federal suit ("*Tri-Cities III,*" Case No. 3:14-cv-01197) on May 21, 2014, naming the AJ as a defendant and alleging that the AJ, "through her rulings in this proceeding, has retaliated against the Petitioner and has intentionally violated the Americans with Disabilities Act, for which the Petitioner is seeking monetary and injunctive relief." After *Tri-Cities III* was filed, Tri-Cities moved for the AJ to recuse herself, a motion which Tri-Cities had unsuccessfully made when it filed the motion for reconsideration; the AJ entered an order of recusal on July 2.

6

Division], must grant the relief requested without a hearing on the merits or be in automatic violation of the ADA. The suspension of due process cannot be considered a reasonable modification of APD rules as the Motion contends. Thus, advancing this position under the threat of legal action far exceeds simply pointing out to the tribunal its obligations under the law and potential penalties for noncompliance.

On May 1, Mr. Dunlap and local counsel for Tri-Cities filed an "Appeal of Order Revoking Permission to Appear Pro Hac Vice" in Davidson County Chancery Court, seeking review of the AJ's decision pursuant to Tenn. Code Ann. § 4-5-322.[5] The court heard argument on June 26 and entered a Memorandum and Order on December 10, 2014, affirming the action of the AJ.

Tri-Cities appeals, articulating the following issues for our review:

1. Whether the AJ violated Tennessee Supreme Court Rule 19 when she revoked Mr. Dunlap's *pro hac vice* petition without any notice whatsoever and despite the fact that Mr. Dunlap's conduct was completely appropriate at all times.
2. Whether the AJ's *sua sponte* allegation and finding that Mr. Dunlap intentionally or fraudulently concealed the existence and outcome of the first federal action, Tri-Cities LLC et al. v. Johnson City et al, Case No. 13-cv-108 (E.D. Tenn. 2013) ("Tri-Cities I"), is baseless in light of the fact that Tri-Cities I had been disclosed by Mr. Dunlap and was is [sic] immaterial to the CON hearing process.
3. Whether the AJ's *sua sponte* allegation and finding that Mr. Dunlap concealed that the federal court action "was now, itself, subject to a stay in deference to the administrative proceeding" is baseless in light of the fact that this was clearly not the case.
4. Whether Mr. Dunlap committed misconduct when he indicated his good faith opinion to the AJ that there were no "new developments" in the case on January 8, 2014 and he reasonably relied on HSDA counsel's assurances that he would advise shortly on "new developments" that the HSDA counsel perceived at the time.
5. Whether Mr. Dunlap's respectful communication to the AJ that she faced potential ADA liability was completely appropriate given the fact that the AJ was subject to the ADA and had an obligation under federal law to provide TCH with a reasonable modification of its rules allowing the issuance of a CON.
6. Whether the Chancery Court's affirmance of the AJ's revocation order was clearly erroneous, and without basis in fact or law.

---

[5] Though Tri-Cities styled the filing as an "appeal," Tenn. Code Ann. § 4-5-322(a)(1) states that judicial review of agency actions is initiated by filing a petition for review.

## II. STANDARD OF REVIEW

Judicial review of decisions of agency actions is governed by the narrow standard contained in Tenn. Code Ann. § 4-5-322(h) rather than the broad standard of review used in other civil appeals. *Wayne County v. Tennessee Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 279-80 (Tenn. Ct. App. 1988). A court may modify or reverse the decision of the agency if the petitioner's rights have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

> 1) In violation of constitutional or statutory provisions;
> 2) In excess of the statutory authority of the agency;
> 3) Made upon unlawful procedure;
> 4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> 5) (A) Unsupported by evidence which is both substantial and material in the light of the entire record.
>    (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h). When this Court reviews the decision of the trial court, we are to determine whether the trial court properly applied the standard of review found at Tenn. Code Ann. § 4-5-322(h). *See Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002) (quoting *Papachristou v. Univ. of Tennessee*, 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000)).

## III. ANALYSIS

At the outset, we address consideration of the order of revocation pursuant to Tenn. Code Ann. § 4-5-322. That statute reads in pertinent part:

> A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

Tenn. Code Ann. § 4-5-322(a)(1). Tenn. Sup. Ct. R. 19 governs the admission of attorneys licensed in other states into the practice of law in Tennessee. Pursuant to section (h) of that Rule, an agency's revocation of admission *pro hac vice* pursuant to paragraph (c) "may be appealed by filing a petition for judicial review pursuant to Tenn.

Code Ann. § 4-5-322." Tenn. Sup. Ct. R. 19(h).[6] The order of revocation of Mr. Dunlap's *pro hac vice* status was not a "final decision" on the appeal of the denial of Tri-Cities' application for a CON; rather, it was an intermediate agency action or ruling in the course of the case, as contemplated by the statute. Reading the rule and the statute together, Mr. Dunlap was entitled to immediate judicial review of the revocation order.[7]

In reviewing an agency's decision pursuant to Tenn. Code Ann. § 4-5-322, the trial court must engage in a three-step analysis. First, the court must determine whether the agency "identified the appropriate legal principles applicable to the case." *McEwen v. Tennessee Dept. of Safety*, 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005). Second, the court must examine the factual findings made by the agency to determine whether the findings are supported by substantial and material evidence. *Id.* Finally, the court "must examine how the agency applied the law to the facts." *Id.* The final step of this analysis involves mixed questions of law and fact; therefore, the court is to give deference to the agency. *Miller v. Civil Serv. Comm'n.*, 271 S.W.3d 659, 665 (Tenn. Ct. App. 2008) (*citing Armstrong v. Metro Nashville Hosp. Auth.*, No. M2004-01361-COA-R3-CV, 2006 WL 1547863, at *2 (Tenn. Ct. App. June 6, 2006), *no perm. app. filed.*

## A. Identification of the Appropriate Legal Principles

The practice of law in Tennessee is a privilege and comes with "the duty . . . to act at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law." Tenn. Sup. Ct. R. 9, § 1. As we have noted, Rule 19 of the Rules of the Tennessee Supreme Court governs the admission of attorneys licensed out of state. That rule reads, in pertinent part:

> A lawyer not licensed to practice law in Tennessee, licensed in another United States jurisdiction, and who resides outside Tennessee shall be permitted to appear pro hac vice, file pleadings, motions, briefs, and other papers and to fully participate in a particular proceeding before a trial or appellate court of Tennessee, or in a contested case proceeding before a

---

[6] While we recognize the differences between an administrative judge and an agency, we do not distinguish between the two for purposes of our analysis and presume that the Supreme Court intended for the word "agency" in Rule 19 to include the administrative judge utilized by an agency in contested cases, as permitted in Tenn. Code Ann. § 4-5-301.

[7] There is a difference under Rule 19(h) as to the nature of appellate review based on whether the attorney's *pro hac vice* status is revoked by a trial or appellate court or by an agency. If by a trial or appellate court, whether to permit review is governed by Tenn. R. App. P. 10; under that Rule, the decision to grant the appeal is discretionary with the appellate court and does not require permission from the trial court. When an agency (or AJ) revokes the status and the party files a petition for review, review is conducted pursuant to Tenn. Code Ann. § 4-5-322.

state department, commission, board, or agency (hereinafter "agency"), if the lawyer complies with the following conditions:

**(a)** A lawyer not licensed to practice law in Tennessee and who resides outside Tennessee is eligible for admission pro hac vice in a particular proceeding pending before a court or agency of the State of Tennessee:

> (1) if the lawyer is licensed, in good standing, and admitted to practice before the court of last resort in another state or territory of the United States or the District of Columbia in which the lawyer maintains a residence or an office for the practice of law;
> (2) if the lawyer is in good standing in all other jurisdictions in which the lawyer is licensed to practice law; and
> (3) if the lawyer has been retained by a client to appear in the proceeding pending before that court or agency.

\*\*\*

**(c)** A lawyer admitted pro hac vice under this Rule may not continue to so appear unless all requirements of the Rule continue to be met. Admission granted under this Rule may be revoked by the court or agency granting such admission upon appropriate notice to the lawyer and upon an affirmative finding by the court or agency that the lawyer has ceased to satisfy the requirements of this Rule. In any proceeding in which a court or agency revokes an admission pro hac vice, the court or agency shall set forth findings of fact and conclusions of law that constitute the grounds for its action; in addition, the court or agency shall send a copy of the order revoking the admission pro hac vice to the Board of Professional Responsibility of the Supreme Court of Tennessee.

Tenn. Sup. Ct. R. 19. The AJ also cited the following provisions of the Rules of Professional Conduct at Tenn. Sup. Ct. R. 8:

Rule 3.3. Candor Toward the Tribunal

(a) A lawyer shall not knowingly:
> (1) make a false statement of fact or law to a tribunal; . . .

Tenn. Sup. Ct. R. 8, RPC 3.3.

Rule 3.5. Impartiality and Decorum of the Tribunal

A lawyer shall not:
(a) seek to influence a judge, juror, prospective juror, or other official by means prohibited by law; . . .

10

Tenn. Sup. Ct. R. 8, RPC 3.5.

> Rule 8.4. Misconduct
>
> It is professional misconduct for a lawyer to:
> (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;
> (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
> (d) engage in conduct that is prejudicial to the administration of justice;
> (e) state or imply an ability to influence a tribunal or a governmental agency or official on grounds unrelated to the merits of, or the procedures governing, the matter under consideration;
> (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law; or
> (g) knowingly fail to comply with a final court order entered in a proceeding in which the lawyer is a party, unless the lawyer is unable to comply with the order or is seeking in good faith to determine the validity, scope, meaning, or application of the law upon which the order is based.

Tenn. Sup. Ct. R. 8, RPC 8.4.

The AJ revoked Mr. Dunlap's *pro hac vice* status under the authority granted at Tenn. Sup. Ct. R. 19(c), upon a finding that he no longer met the requirements of the Rules of Professional Conduct. In so doing, the AJ identified Tenn. R. Sup. Ct. 19 and Tenn. Sup. Ct. R. 8, RPC 3.3, 3.5, and 8.4 to be the applicable legal standards and principles. In like manner, the Chancellor utilized Tenn. Sup. Ct. R. 9, § 33 in performing her review.[8] These were the appropriate procedures and principles to apply.

---

[8] That procedure, set forth in Tenn. Sup. Ct. R. 9, § 33, "Appeal," reads in pertinent part:

> b) The review shall be on the transcript of the evidence before the hearing panel and its findings and judgment. If allegations of irregularities in the procedure before the hearing panel are made, the trial court is authorized to take such additional proof as may be necessary to resolve such allegations. The trial court may, in its discretion, permit discovery on appeals limited only to allegations of irregularities in the proceeding. The court may affirm the decision of the hearing panel or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the party filing the Petition for Review have been prejudiced because the hearing panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory

**B. Substantial and Material Evidence to Support the Factual Findings**

Tri-Cities' contentions on appeal call for us to overturn the factual findings of the AJ; that, however, is not the nature of our review. Instead, we examine the AJ's factual findings to determine whether they are supported by substantial and material evidence. "Substantial and material evidence is the amount of relevant evidence that a reasonable person would require to reach a rational conclusion." *Miller v. Civil Serv. Comm'n of Metro. Gov't of Nashville & Davidson Cty.*, 271 S.W.3d 659, 665 (Tenn. Ct. App. 2008) (citing *Clay County Manor, Inc. v. Dep't of Health & Env't,* 849 S.W.2d 755, 759 (Tenn. 1993); *Southern Ry. Co. v. State Bd. of Equalization,* 682 S.W.2d 196, 199 (Tenn. 1984); *Bobbitt v. Shell,* 115 S.W.3d 506, 510 (Tenn. Ct. App. 2003)). "Findings of fact made by the agency are not reviewed *de novo;* our review is limited to the record of the case." *Freedom Broad. of TN, Inc. v. Tennessee Dep't of Revenue*, 83 S.W.3d 776, 781 (Tenn. Ct. App. 2002) (citing Tenn. Code Ann. § 4-5-322(g)).

The AJ made numerous findings of fact before revoking Mr. Dunlap's *pro hac vice* status, including that "Mr. Dunlap . . . request[ed] that the administrative appeal of the CON denial be stayed pending the resolution of a related federal court action"; that Mr. Dunlap represented in a January 8 email to the AJ and HSDA's counsel that there were no new developments in *Tri-Cities II*; that the magistrate judge's order in *Tri-Cities II*, which included a history of the case as well as of *Tri-Cities I,* stated that "it is the law of this case that [Tri-Cities] must procure, or at least attempt to procure, certain administrative remedies" and that the magistrate judge "expressed surprise that the CON appeal had been delayed at the request of Tri-Cities after having professed a need for an expeditious resolution." The AJ also found that Mr. Dunlap, in the Objection to the Motion to Set, objected to setting the contested case for hearing and demanded a modification of the HSDA rules so that Tri-Cities could be granted a CON "without the formality of a hearing"; that he made certain statements (reproduced in part in Section I, *supra*); and that he provided no information about the current status of the federal litigation.

The record before us contains evidence in the form of letters and pleadings authored by Mr. Dunlap as well as orders entered in the federal lawsuits, set forth in some detail in section I, *supra*, which is substantial and material, and which supports the factual findings of the AJ in the initial order.

---

provisions; (2) in excess of the hearing panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record. In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the hearing panel as to the weight of the evidence on questions of fact.

In the motion for reconsideration, Tri-Cities took issue with the AJ's determination that Mr. Dunlap's conduct, as demonstrated in the pleadings and letters he filed on behalf of Tri-Cities, violated the standards set in the Rules of Professional Conduct. The specific factual finding which Tri-Cities argued was not supported by the record was the finding that Mr. Dunlap had not supplied the AJ with relevant part of the *Tri-Cities II* complaint.[9]  The motion referenced page 32 of the *Tri-Cities II* complaint to show that Mr. Dunlap had not failed to disclose the nature and outcome of *Tri-Cities I*. However, the administrative record only contains the first four pages of the *Tri-Cities II* complaint; page 32, which is the "relevant part of the federal complaint" as stated by the AJ, is not included in the record.  Further, nothing in the first four pages of the complaint (three pages of which consists of the table of contents) gives any indication of the existence or history of *Tri-Cities I*.

In the order denying the motion for reconsideration, the AJ stated that "a few points of clarification are needed" and explained that "Mr Dunlap's permission to appear Pro Hac Vice was actually revoked on account of the Petitioner's Objection to Motion to Set Hearing and Demand for Reasonable Modification under the [ADA] . . in which Mr. Dunlap makes an unveiled threat to initiate litigation against this tribunal should it decline to make a ruling in his favor."  The AJ also made additional findings that Mr. Dunlap failed to file "the relevant part of the federal complaint" in *Tri-Cities II*, the

---

[9] In the memorandum in support of the motion, Tri-Cities argued:

> [T]he allegation that Mr. Dunlap failed to disclose *Tri-Cities I* is patently incorrect.  On July 29, 2013, Mr. Dunlap sent a copy of the Tri-Cities II Complaint to Judge Summers along with his letter ("I'm attaching a copy of the federal complaint"). This was done to assist Judge Summers in understanding the issues in the federal action. The Complaint clearly and unambiguously identifies *Tri-Cities I* and its dismissal without prejudice on ripeness grounds:
>
> **_Tri-Cities Holdings et al. v. Johnson City et al_., Case No. 13-cv-108 (E.D. Tenn. 2013)(<u>case dismissed without prejudice on ripeness grounds</u>).**
>
> See *Tri-Cities I*, Doc. 1, p. 32, n. 67 (emphasis added).  Furthermore, the Complaint in *Tri-Cities II* clearly and unambiguously references evidence and testimony from *Tri-Cities I* multiple times.
>
> There was no concealment by Mr. Dunlap.  It is undisputed that he gave this Court a copy of the *Tri-Cities II* Complaint which clearly and unambiguously references, including the court,  caption, and a specific and fairly crafted parenthetical reference that Tri-Cities I was "<u>dismissed without prejudice on ripeness grounds</u>." *Id.* Thus, Mr. Dunlap has disclosed the nature and outcome of *Tri Cities I*. . .

(Emphasis in original.)

relevance of which "is the indication from the federal court of its preference for completion of the administrative proceedings prior to commencement of the federal litigation"; failed to provide "rather pertinent information regarding the status of the federal proceedings . . . when requesting that the stay remain in place"; and failed to "provide[] [any] authority to support the contention that a tribunal . . . must grant the relief requested without a hearing on the merits or be in automatic violation of the ADA" and "advance[ed] this position under the threat of legal action."

The pleadings and letters are substantial and material evidence supporting the AJ's findings.

## C. Application of the Law to the Facts

In determining whether an agency has properly applied the law to the facts, we have explained that:

> The courts may neither reweigh the evidence nor substitute their judgment for the [agency]'s, even if the evidence could support a conclusion different from the one reached by the [agency]. Rather, the courts must determine whether a reasonable person could appropriately have reached the same conclusion reached by the [agency], consistent with a proper application of the controlling legal principles.

*Miller v. Civil Serv. Comm'n of Metro. Gov't of Nashville & Davidson Cty.*, 271 S.W.3d 659, 665 (Tenn. Ct. App. 2008) (internal citations omitted) (citing Tenn. Code Ann. § 4-5-322(h)(5)(B); *City of Memphis v. Civil Serv. Comm'n,* 216 S.W.3d at 316; *McClellan v. Bd. of Regents,* 921 S.W.2d 684, 693 (Tenn. 1996); *Eatherly Constr. Co. v. Tenn. Dep't of Labor & Workforce Dev.,* 232 S.W.3d 731, 735 (Tenn. Ct. App. 2006); *McEwen v. Tennessee Dep't of Safety*, 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005)).

On the basis of the factual findings discussed above, the AJ concluded that Mr. Dunlap breached the conditions on which he was granted *pro hac vice* admission and did not conduct himself in conformity with professional standards because: he made an "unveiled threat that the Administrative Judge and the tribunal will face an ADA enforcement action by the Department of Justice should the Administrative Judge fail to provide the requested relief"; he misrepresented to the tribunal the status of the federal litigation and used the misrepresentation to attempt to coerce a decision in favor of his client without the benefit of a hearing; his coercion and misrepresentation [we]re "a flagrant attempt to improperly influence a judge in violation of Rules 3.3., 3.5, and 8.4 of the Tennessee Rules of Professional Conduct, as well as Tenn. Code Ann. § 39-14-112";

14

and he expressed contempt for the tribunal and impeded a resolution of the CON appeal.[10]

We agree that Mr. Dunlap's conduct did not comply with Tenn. Sup. Ct. R. 8, RPC 3.3, 3.5, and 8.4, rendering revocation of his *pro hac vice* status appropriate. *See* Tenn. Sup. Ct. R. 19(c).

### D. Notice

We next address Tri-Cities' contention that the AJ "violated Tennessee Supreme Court Rule 19 when she revoked Mr. Dunlap's *pro hac vice* petition without any notice whatsoever." Rule 19 provides in pertinent part:

> Admission granted under this Rule may be revoked by the court or agency granting such admission upon appropriate notice to the lawyer and upon an affirmative finding by the court or agency that the lawyer has ceased to satisfy the requirements of this Rule.

Tenn. Sup. Ct. R. 19(c).

The order revoking Mr. Dunlap's privileges identified the specific conduct which violated the Rules of Professional Conduct and led to the revocation of his *pro hac vice* privileges. Ten days after the order was issued, Tri-Cities filed a motion to reconsider, in which ten arguments were raised, including the assertion that Mr. Dunlap did not have adequate notice of the revocation of his privileges and an opportunity to respond. In this motion, Tri-Cities addressed each of the specific instances of Mr. Dunlap's conduct that were found to have violated the Rules of Professional Conduct. Upon consideration of the entire record, the lack of specific notice to Mr. Dunlap prior to the entry of the order was not an abrogation of Rule 19. Under the unique circumstances of this case, the notice of the factual basis and grounds for the revocation of his privileges which he received in the order was appropriate inasmuch as Mr. Dunlap was fully advised of the basis of the revocation and had the opportunity to—and did—include any concern relative to notice in his motion for reconsideration, which was fully considered by the AJ.

---

[10] The AJ, in attempting to move the contested case toward resolution, was performing her duties under Tenn. Code Ann. §4-5-301. As an officer of the court, Mr. Dunlap was permitted to zealously advocate for his client by informing the tribunal of how he believed the ADA and Rehabilitation Act should be applied; threatening to sue the AJ and the Administrative Procedures Division in order to get the result he desired, however, was wholly inappropriate. Moreover, clothing inappropriate language with the word "respectfully" does not negate the impropriety of the words.

## IV. CONCLUSION

Upon our review of the entire record, the AJ identified the correct legal principles, the evidence supports the AJ's factual findings, and the AJ properly applied the law to the facts; in like fashion, the trial court properly applied the standard of review at Tenn. Code Ann. § 4-5-322. Accordingly, we affirm the decision revoking Mr. Dunlap's *pro hac vice* privileges and remand the case to the trial court with instructions to remand the case to the agency for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE